Foot *against* Tracy.

Foot
v.
Tracy.

In an action for a libel, can the defendant give in evidence, under the general issue, the general character of the defendant, in mitigation of damages ? *Quere.*

THIS was an action for publishing two libels, concerning the plaintiff, in the Lansingburgh Gazette. The cause was tried before Mr. Chief Justice *Kent*, at the Albany *circuit*, in October 1804. The declaration contained two counts ; one for a publication, on the 3d day of May 1803, of the following words : " The character of the *wretch* is too well known to require a description, every lineament of his countenance reminds the beholder, that he was not born to be drowned."—The other count was for a publication, on the 16th August, 1803, of the following words : " Yet " these are cases which by a commissioned pettifogger of " the lowest grade, are represented as being in analogy " with that of Mr. *Croswell*, and which to deceive a too " credulous public, he has ushered to them through the " foul swillage of a mercenary, drunken, subsidized rene- " gado."—The defendant pleaded *not guilty*. The publication was admitted, and the inuendoes proved.

The defendant then offered to prove the *general character* of the plaintiff, both as a lawyer, and a man, to be so bad, as not to entitle him to more than mere nominal damages, which evidence was overruled by the Judge.

The jury found a verdict for the plaintiff, for two hundred dollars damages.

A motion was made for a new trial for the misdirection of the Judge who tried the cause, and the same was argued at the last term by *Emott* for the defendant, and by *Woodworth* Attorney General, and *Edwards* for the plaintiff.

THOMPSON, J. This is an application for a new trial, on the ground that the defendant was not permitted to give evidence touching the general character of the plaintiff.— The action was for publishing a libel, and the single question presented, is, whether in such case, it be competent for the defendant to go into evidence of the plaintiff's general character ?

I have had some difficulty, in making up an opinion on this question. The researches of counsel, have not been

ALBANY
Feb. 1806.

Foot
v.
Tracy.

able to furnish us with much aid from adjudged cases ; and our practice at circuits has not, I believe, been uniform on the subject. We are left, therefore, pretty much at large, to establish such a rule, as will be the most just, and analogous to the general rules of evidence. There can be little doubt, that the character of a party, prosecuting an action like the present, is of some importance, in estimating the measure of damages. Actions of this description, are, in judgment of law, brought to recover damages, for a real, or supposed injury, to the reputation of the party libelled. It cannot be just, that a man of infamous character, should, for the same libellous matter, be entitled to equal damages with the man of unblemished reputation ; yet such must be the result, unless character be a proper subject of evidence before a jury. It would not be competent for the defendant to plead such matter, and thereby put in issue the plaintiff's character ; and it is a settled rule of evidence, that whenever a party cannot have advantage of the special matter by pleading, he may give it in evidence on the general issue. Willes 24. *Smith* v. *Richardson*, Buller's *N. P.* 298.

The doubt with me has been, whether the inquiry ought to extend to the general character of the party, or be restricted to his character in the capacity in which he has been libelled, considering it analagous to an examination into the character of a witness. The question, in that case, is not, as to his character at large, but as to his general character for truth and veracity. The result of my reflections, however, is, that the general character should form the subject of examination. The character of the plaintiff comes in, collaterally, and is not directly put in issue. To confine the inquiry to the particular character of the party in the capacity in which he has been libelled, would be, in some measure, infringing upon a well settled rule, that under the general issue the truth of the words cannot be given in evidence, in mitigation of damages. 2 *Stra.* 1200. *Underwood* v. *Parks.* Willes 20. *Smith* v. *Richardson.*

In the case of *Dennis* v. *Pawling*, 12 Vin. Ab. 159. Pl. 16. Baron *Price*, before whom the cause was tried, said

he would not allow any *particular credit* of the plaintiff to be given in evidence ; but if the defendant had a mind to examine to this, the question must be asked in *general.*

As the legal intendment is, that the action is brought to repair an injury done to a person's character, in the estimation of the public, the jury must be left very much in the dark, in making a just reparation in damages, without being furnished with some *data*, by which to estimate its value, and susceptibility of injury. Though the inquiry into general character may be, in some measure, vague, and uncertain, and, in some cases may lead to abuses ; yet I have adopted it, as being the least exceptionable course. Such inquiries may be legally made of witnesses, as to enable the jury justly to appreciate the sources from which they form their opinion of the general character of a party, and thereby prevent very great evil or imposition.

I am, therefore, of opinion that the verdict should be set aside, with costs to abide the event of the suit.

LIVINGSTON, J.   On the argument, I was much struck with some of the reasons which were urged in favor of a general inquiry into character ; but am now satisfied that these impressions were incorrect, and that more mischief will follow from an adoption of such a rule, than by excluding the investigation altogether, except when presented, as a complete justification, in the form of a special plea.   It was conceded, that for that purpose, the evidence under this plea could not be offered except only in mitigation of damages.   But where is the essential difference between nominal damages, and a verdict for the defendant ?   The plaintiff is as much out of pocket, and his reputation as far from being repaired in the one case, as in the other.   To this it is answered, that a person of bad fame has no right to bring a suit, or if he does, that he cannot expect the same compensation, as those who have a character to lose.   But no one, however low a man's reputation be, has a right to publish slanders of him, or to charge him with crimes of which he is innocent.   If he confines himself to the truth, he can plead it ; but if he will deal in general invective, or indulge his wit, and venom, by travelling out

of the record, he must abide by the consequence. Nothing <span style="float:right">ALBANY,<br>Feb. 1806.</span> is better settled, than that the truth of a libel, or of slander, cannot be relied on, in justification, unless pleaded. What is not permitted then directly, ought not to be tolerated in any other way. If this be allowed under the general issue, it will not only have a tendency to justify, but, in effect, amount to the same thing, and that, without legal proof of any one fact. Nothing can he inferred from the silence of the English books. The law in Great-Britain may be regarded as well settled, and then the question would not occur. The cases in slander, as far as they go, and the reasons of them, apply to libels, and are opposed to the admission of such testimony. No decision, it is true, can be found, of the question, how far general reputation is proper evidence on not guilty, in slander, but the twelve Judges in the case of *Smith* v. *Richardson** were unanimously of opinion that where words import a felony, the truth could not be given in evidence, on the general issue, in mitigation of damages, which rule was afterwards extended to every species of slander, and not barely to such as imported a charge of felony.† Now, if the truth of a slander may not be shewn in mitigation, *a fortiori*, evidence of general reputation, which is only another way of making the jury believe that the defendant has published nothing but the truth, ought to be rejected; for it would be absurd to shut our ears against positive evidence of a fact, and yet listen to circumstantial proofs. Nor is it any reason for permitting the inquiry, that a man is always prepared to support his general character. This is not only not true in point of fact, but not being in issue, the plaintiff is no more bound to bring witnesses to repel an *attack* of that kind, than a refutation of the charge which gave rise to the suit. Baron *Price*,‡ on a trial before him, would not allow any thing to be given in evidence, which tended to justify the words, though in mitigation only.

One of the questions, which was overruled here, was manifestly improper. It went directly to prove the plaintiff a pettifogger, which was part of the libel complained of,

Vol. I.                    H

*Margin notes:*

Foot
v.
Tracy.

* Willes 20.

† 2 Str. 1200.
Underwood v.
Parks.

‡ Dennis v.
Pawling, 12
Vin. 159.

and the truth of which was not pleaded. In another part of the publication he was called a " *wretch*," and if the defendant had been permitted to prove him void of *morals, honesty,* and *integrity,* this accusation would also have been completely proved, and, perhaps, in the only way such a charge could be made out. It was said, this proof ought to have been received, because the truth of these charges could not be pleaded. If so, it was the defendant's own fault to make them, and is no reason why the plaintiff should be surprised, or the rules of evidence subverted. But this difficulty was only imaginary. It was easy to plead, that he was a pettifogger, and perhaps it would have been competent, to have disclosed in the same way, *particular facts of dishonesty* in the plaintiff, which might have justified his applying to him the other harsh epithets made use of; but without giving an opinion on this point, the answer already made to this difficulty, if it be real, is, that it is a dilemma of the party's own creating. If it were a reason for examining into general character, the most atrocious libel might be published and the party defend himself, not by proof of any particular charge, or improper conduct, but by a species of testimony springing, perhaps, from political or religious intolerance or bigotry, and always too general and equivocal, if not too easily procured, to afford much satisfaction.

The case of *J'Anson* v. *Stewart,* 1 D. & E. 748. virtually involves a decision of this question, and though no authority here, it is entitled to attention, if it should be found on examination to contain a fair exposition of the common law on this point. The defendant, to meet the libellous matter, which was calling the plaintiff a " swindler and common informer," pleaded generally, " that he was one of " a gang of swindlers and common informers, and had been " guilty of deceiving and defrauding divers persons."

The objection to this plea, and which prevailed, was, that it was too general, as it did not set forth any particular act of swindling, nor whom the plaintiff had defrauded, nor in what manner.

Mr. Justice *Buller*, in giving his opinion, observes, "that it is not true that the *general character* of the plaintiff is put in issue, for the evidence to support the defendant's plea, (or, which is the same thing, the libel) must be special; for where the whole defence arises from proof of particular facts, the general character is not in issue."— On this I remark, that if general character could not be put in issue, even in the form of a plea, which gave full notice to the opposite party, much less should it be permitted in a way, which cannot fail to be attended with surprise and real inconvenience.

Though this case be not without its difficulties, the safest course will be, to exclude, on trials of this kind, all evidence of general reputation. It will only impose on those who chuse to publish their animadversions on the crimes or failings of others, which occupy so great a portion of our public papers, the task of proving, by particular facts, the truth of what they assert. Nor is there any hardship in this. Those who sport with the feelings of others, under the professions of zeal for public good, on no other basis than that of common fame, which is not always an infallible guide,* cannot complain, if courts require from them on these as on most other occasions, some better proof of their calumnies than general opinion. If every man who does not enjoy an unblemished reputation, or has the misfortune to be disesteemed by his neighbours, were fair game, in a country where the liberty of the press is so much perverted and abused, few, indeed, would escape.

There was some testimony offered to shew a provocation, which was also overruled, but as that has not been relied on, in the motion for a new trial, I do not wish to be understood as giving any opinion on it. The *postea* should be delivered to the plaintiff.

TOMPKINS, J. declared himself of the same opinion.

SPENCER, J. gave no opinion.

KENT. C. J. The single question in this case is, whether the defendant, under the general issue, in an action of slan-

---

* *Tam ficti pravique tenax, quam nuncia veri.*—Virgil.

ALBANY,
Feb. 1806.

Foot
v.
Tracy.

der, may, at the trial, give evidence as to the general character of the plaintiff in mitigation of damages?

The allegation in the declaration, that the plaintiff is of good fame, is but inducement to the action, and is not traversable. (*Strachy's Case*, Styles 118.) It is a general rule, that matters which cannot be pleaded, may be given in evidence in mitigation of damages, and when such matters are excluded from evidence, as the truth of the charge in an action of slander, one principal reason is, that they may be pleaded in bar, and the plaintiff be thereby apprised of the defence. (*Smith v. Richardson*, Willes Rep. 20.) It was upon this ground that Baron *Price*, at *Nisi Prius*, in the cause of *Dennis* v. *Pawling*, (12 Vin. 159. Pl. 16.) ruled, that whatever tended to justify the words should not be given in evidence, but that whatever tended to shew a provocation, or any transaction between the parties giving occasion for speaking the words, was proper, *because those matters could not be pleaded*. So also, in the case of *Coot* v. *Berty*. (12 Mod. 232.) it was held that a licence by the husband to the wife, to commit adultery could not be plead in bar, to an action of trespass by the husband, but that it might be given in evidence, in mitigation of damages. In these actions for criminal conversation with the plaintiff's wife, it is the settled practice, to admit not only the criminal conduct in general of the wife, and even particular acts, as her general behaviour is put in issue, (*Elsam* v. *Fawcett*, 2 Esp. Cases, 562. Buller's N. P. 296.) but it is also the practice to inquire into the moral character and behaviour of the husband himself, who is the party to the record. (See *Coot* v. *Berty*, supra. *King* v. *Francis*, 3 Esp. Cases, 116. 4 Esp. Cases. *Windham* v. *Wycomb*, p. 16. *Bromley* v. *Wallace*, p. 237.)

As the general character of the plaintiff cannot be questioned by the plea, it would seem to result necessarily from the received principle, that it might be questioned in mitigation of damages. The character of the plaintiff must be considered as coming in, at least collaterally, upon the trial. It is always alleged as the inducement to the action, and the injury to it is the *gravamen* complained of. In assessing the

damages, the jury must take into consideration, the general character, and the standing and estimation of the plaintiff in society ; for it will not be pretended, that every plaintiff is entitled to an equal sum, for the worth of character. The jury have, and must inevitably have, a very large and liberal discretion in apportioning the damages to the rank, condition and character of the plaintiff, and they must have evidence touching that condition and character, so as to have some guide to their discretion.

If the plaintiff's character comes collaterally in question, in an action of slander, all that the books say in these cases is, that you cannot go into evidence of particular facts. There is not, I presume, a case to be met with, in which it is ruled that you cannot examine into general character. Nor is there any general principle of law violated by such examination. Every man is supposed capable of supporting his general character, though no man is presumed to be capable of repelling a specific charge without previous notice, and this is the true and rational distinction applicable to the case before us. *(Buller's N. P.* 296, 5.)

The case of *Dennis* v. *Pawling*, is an authority in favor of the defendant's proposition. That was an action of slander, and Baron *Price* would not allow any *particular credit* to be given of the plaintiff in evidence on the trial ; but said, that if the defendant had a mind to examine to this, the question must be asked *in general.* So in cases of *crim. con.* above referred to, the defendant was permitted to question the general character and conduct of the plaintiff. It appears to me, therefore, that the admission of such testimony violates no rule of law that it is rather required by the general principle, admitting in evidence, matters relevant to the cause, and which could not be pleaded, and admitting the general character of the party to be examined, when it comes in collaterally ; that such evidence is essential to guide the discretion of the jury, and that its legality receives strong countenance from decisions bearing on the question. I am of opinion, accordingly, that the verdict be set aside, with costs, to abide the event of the suit.

ALBANY,
Feb. 1806.

Overseers of
Shawangunk
v.
Overseers of
Mamakating.

The court being thus equally divided, the defendant took nothing by his motion.

Judgment for the plaintiff.