INMAN vs. FOSTER.

In *slander* it is no defence, nor can it be given in evidence in mitigation of
damages, that the defendant at the time of the speaking of the words gave
his author, and was, in fact, told by another what he uttered against the plain-
tiff.

Nor can *general reports* of the truth of the charges be given in evidence in mit-
igation of damages, unless they be such as to have affected the *general char-
acter* of the plaintiff.

Words spoken more than two years before suit brought may be given in evidence
to shew malice.

Proof in support of the plaintiff's general character is admissible, where his rep-
utation has been attacked on the trial by the defendant: otherwise, not.

THIS was an action of *slander*, tried at the Monroe circuit,
in March, 1830, before the Hon. ADDISON GARDINER, one of
the circuit judges.

The plaintiff obtained a verdict for $450, and a case was made, upon which the court were moved for a new trial. The case does not disclose the words spoken, and simply states, in relation to the pleadings, that the defendant pleaded the *general issue*, and that a stipulation was entered into, permitting the defendant to go into any defence except a justification. The plaintiff shewed a cause of action; whereupon the defendant offered to prove *in mitigation of damages*, that previous to the speaking of the words, one *Brown had told him the story* as he had reported it—Brown representing himself to have personal knowledge on the subject; that the defendant had inquired into the character of Brown, and had ascertained that he was a respectable man; this evidence was objected to and rejected. The defendant then offered to prove *that reports of the truth* of the words charged had been circulated in the neighborhood of the plaintiff for a long time previous to the speaking of the words by the defendant; this evidence was objected to, and the judge ruled that it was inadmissible, unless the reports were so common as to affect the *general reputation* of the plaintiff. Evidence in defence having been given by the defendant, the plaintiff offered to prove slanderous words imputing the same charge for which the action was brought, but spoken at another time and place; this evidence was objected to, and the judge ruled that it was admissible, as well to *sustain the action* as to *prove malice*. The plaintiff made the attempt, but failed in giving the proof offered. For the purpose of shewing malice, or the *quo animo* the words charged were spoken, the plaintiff gave evidence of slanderous words spoken more than two years before suit brought; the defendant objected to this evidence, insisting upon the statute of limitations, but the objection was overruled. The plaintiff gave evidence of his *general character* for honesty and integrity; this evidence was objected to by the defendant, on the ground that he had not sought to impeach the plaintiff's general character; but the objection was overruled, the judge deciding that the evidence of general reputation of the guilt of the plaintiff, in respect to the charge imputed to him by the defendant, having been gone into by the defendant, it did in a manner impeach the plaintiff, who there-

fore had a right to rebut the evidence by proof of his general good character.

*B. F. Butler*, for the defendant. The defendant should have been permitted to prove that previous to the speaking of the words, *Brown* told him the story that he had reported, and that Brown was a man of good character, to shew the absence of malice. In *England* a defendant may prove that what he said he heard from another. 1 Holt's Cas. 299. 3 Com. Law R. 113. Such also is the rule in *Pennsylvania*, 1 Binney, 85 and 90, 2 Brown's Penn. R. 90; and in our own court, in *Coleman* v. *Southwick*, 9 Johns. R. 48, it would seem to have been conceded that such evidence was admissible, the objection there being only to the witness, and not to the character of the proof. Evidence of *reports* injurious to the plaintiff's character should be admitted, because they directly contradict the allegation in the declaration, that he is of good fame and not suspected. Such evidence was held improper in *Mapes* v. *Weeks*, 4 Wendell, 659, but most probable was so held on account of the peculiar circumstances of the case, and the deep malice of the defendant. If a man whose fame is disparaged is not entitled to recover as much as he whose character is above suspicion, this evidence should be received. The evidence of words spoken more than two years before the commencement of the suit, ought not to have been received. A plaintiff may give in evidence other words not actionable, to shew malice in the defendant; also the same or other actionable words spoken after suit brought, but the words thus given in evidence should expressly refer to those which are subject of the action. 2 Starkie's Ev. 870. 1 Phillips' Ev. 135. 3 Pick. 376. If so, words spoken before are manifestly inadmissible. So also words spoken more than two years previous to suit brought should not be received in aggravation, in analogy to the statute of limitations, which bars the action for the principal words. Proof of the plaintiff's general character was inadmissible, as his character for honesty and integrity had not been impeached, and the intent to impeach it was expressly disclaimed. 1 Campb. 469. 3 id. 519. 3 Esp. 116. 3 Com. R. 325. 5 Pick. 244. 2 Starkie's Ev. 270. In *England* the

courts are very indulgent to defendants in actions of slander, the object of which is to discourage actions too frequently brought from vindictive motives, and in which there is such great danger of mistake and perjury. Such also is the policy of our law by limiting the actions of slander to two years.

*M. T. Reynolds*, for the plaintiff. If the rule of law were as contended for on the the other side, that a defendant in slander, who gives his author, may shew such fact in mitigation, it would not avail the defendant, as here there was no pretence that at the time of the speaking of the words the defendant gave his author. Under the above rule, unless the defendant qualifies his charges by stating that he received his information from another, and names him, he is not subsequently permitted to show the fact that he was informed. Evidence of reports that the plaintiff was guilty of the offence imputed to him is inadmissible, unless such reports are so common and general as to affect the general character of the plaintiff. 5 Cowen, 499. 3 Wendell, 395. As to the proof of words spoken more than two years before suit brought, why should the defendant complain ? he never could be subjected to an action for them, and surely it was proper, in agravation of damages· Even within the rule contended for by the defendant's counsel, such words might be shewn, for it might well happen that they related to the same tranaction, been spoken the day before the actionable words were uttered, and the latter words been but a continuation of the same slanderous attack upon the reputation of the plaintiff. 1 Campb. 48. 3 Bin. 550. Peake's N. P. Cas. 166. 2 Starkie's Ev. 869. The case of *Mapes* v. *Weeks*, 4 Wendell, 659, is decisive of this case ; there it was adjudged that evidence that the defendant had been told by a third person that the plaintiff was guilty of the crime imputed to him was inadmissible, and also that general reports could not be shewn, unless they affected the general character of the plaintiff.

*By the Court,* SAVAGE, Ch. J. The case does not state what were the words, nor the the nature of the charge they contain ; neither does it state what what was the evidence given in de-

fence. I must take it for granted that the defendant did not name his author, when he uttered the slanderous words.

The first question is whether he should have been permitted, in mitigation of damages, to prove that Brown told him the story which he reported. It was resolved in Northampton's case, 12 Co. 134, "that if J. S. publish that he hath heard J. M. say that J. G. was a traitor, or thief, in an action of the case, if the truth be such, he may justify." In *Davis* v. *Lewis*, 7 T. R. 17, Lord Kenyon says, "If a person say that such a particular man (naming him) told him certain slander, and that man did in fact tell him so, it is a good defence to an action to be brought by the person of whom the slander was spoken; but if he assert the slander generally, without adding who told it to him, it is actionable." The same rule is found in *Maitland* v. *Golding*, 2 East, 436, and *Woodworth* v. *Meadows*, 5 East, 469; in such case the words must be given so as to give an action against the person who first uttered them. This is *denied to be law* by this court, in *Doyle* v. *Lyon*, 10 Johns. R. 447. Kent, Ch. J. says, "Words of slander, with the name of the author, may be repeated with a malicious intent, and with mischievous effect;" the slander may derive all its force from the charcter of the person who repeats it and the author may be utterly irresponsible. In the case of *Woodworth* v. *Meadows*, the boy who made the complaint, and told the story, was only nine years of age; of what avail is a right of action against such an originator? In the case of *Doyle* v. *Lyon*, it was established that the publisher of a libel, with the name of the author, was liable to an action, notwithstanding the name of the author. In *Lewis* v. *Walton*, 4 Barn. & Ald. the doctrine of Northampton's case is qualified to a publication on *a fair and justifiable occasion, without malice*. It is not contended in this case, that the fact offered to be proved was a justiffcation, but only a circumstance in mitigation; when the slander was published no name was given. It is in that respect like the case of *Mills and wife* v. *Spencer and wife*, Holt, 533; 3 Comm. Law R. 177; the defendants had pleaded according to Northampton's case and the others referred to that a certain person had communicated the slander, and that the name had been given at the time of speaking the words.

ALBANY,
Jan. 1832.

Inman
v.
Foster.

On the trial the defendant's counsel did not attempt to support these pleas, but offered evidence that defendant's wife had heard the charge from other persons, and made the communication by way of caution; this was offered in mitigation; and it was argued on the authority of Leicester's case, that it diminished the malice. Gibbs, Ch. J. said, that "Leicester's case stood upon evidence of general suspicion, but this was a proposition to mitigate damages, by shewing that the specific slander was communicated by a third person; the slander imputed was stated as a fact of the defendant's own knowledge, and she cannot, when called to answer for it, say another person told me so. If an action be brought against A. for calling B. a thief, it is no defence for A. under the general issue, to prove that he was told so by C. A. is answerable for the full measure of his slander." He adds, "If he qualifies his charge, or annexes to it at the time of uttering it, his author, (naming him,) it opens another consideration. General reports have been admitted in mitigation of damages; but not specific facts." In this court we neither receive *general reports* nor *specific facts*, as has been decided in several cases; both stand on the same principle, unless by general reports is meant *general character*. This evidence has been admitted in *Pennsylvania*, in *Kennedy* v. *Gregory*, 1 Bin. 85, and *Morris* v. *Duane*, p. 90, upon the authority of the English cases, which were rejected by Chief Justice Gibbs. The same evidence has been rejected in *Connecticut*, in *Treat* v. *Browning*, 4 Conn. R. 415. Chief Justice Hosmer says, "The court rejected testimony offered to prove in mitigation of damages, that prior to the publication of the words by the defendant Catharine, she had heard them from a Mrs. Browning; and this has given rise to another objection. The cases which have been decided on this subject do not harmonize; but the preponderance of the determinations, in my judgment, is against the admission of the proffered testimony." He then cites most of the cases on the point, and concludes by stating that the testimony was a surprise upon the plaintiff, and it was far more just that the defendant who had made an unqualified charge on the plaintiff, should "be answerable for the full measure of her slander."

ALBANY,
Jan. 1832.

Inman
v.
Foster.

In *Coleman* v. *Southwick*, 9 Johns. R. 48, the defendant offered to prove information he had received from a third person, and it was rejected chiefly on the ground that the person himself who gave the information was the best witness to prove it; the attention of the court does not appear by the report of the case to have been drawn to the inadmissibility of the testimony as improper in itself; but Kent, chief justice, remarks, that the Pennsylvania cases have extended the English rule. In the case of *Dole* v. *Lyon,* which was subsequent, it was held that testimony of a similar quality could not be received. The case of *Maps* v. *Weeks*, 4 Wendell, 659, is in point. According to the rule of this court, which I have shewn is also the rule of the English courts, as well as of the courts of Connecticut and Massachusetts, the testimony offered was rightly rejected. Although such evidence may tend to diminish the malice, yet it does not disprove it; and the effect it is calculated to produce on the plaintiff is to render his character suspicious. Its tendency is, if not to prove the truth, yet to create suspicions of the plaintiff's guilt, when the defendant dare not attempt to prove it; and therefore such testimony is inadmissible.

The second point is, that the judge erred in excluding reports. On this point I shall not enter into any argument, the question is settled in this court; *Matson* v. *Bush*, 5 Cowen, 499; *Root* v. *King*, 7 id. 613; 6 Mass. R. 514; 4 Wendell, 659, and *Gilman* v. *Lowell*, ante, 673. 3. The third point raised at the trial was not insisted on upon the argument, as even if wrong, no injury was sustained; it was wrong, so far as it was admitted to sustain the action, and right, so far as to prove malice. 4. Words were received to prove malice, which were spoken more than two years before suit brought. It is stated in Buller's Nisi Prius, p. 7, that after the plaintiff has proved the words as laid, he may give evidence of other expressions made use of by the defendant as proof of his ill will towards him. The cases in England on this point are *nisi prius* decisions. Words not laid are given in evidence, not to sustain the action, it is said, but to shew malice, the *quo animo*, the words laid in the declaration were spoken; and in this point of view it is immaterial whether they are actionable or not, provided they shew malice. In some of the cases the plaintiff was confined to words

not actionable, spoken after the words laid in the declaration; in others, any words have been received spoken at any time; but when subsequent actionable words are proved, it is said the jury should be cautioned not to give damages for such words. Peake's N. P. 22, 75, 125, 166. 1 Campb. 48. Starkie on Slander, 398. 3 Binney, 550. Were this question free from embarrassment on the ground of authority, I should think, with Chief Justice Tilgman, and with Chief Justice Spencer, 7 Johns. R. 270, that the practice is dangerous; for though the jury are charged not to give damages for such words, they may be imperceptibly influenced by them. And why should evidence be given to a jury which is not to influence the verdict? The actionable words laid and proven sustain the action; they imply malice; then why prove more malice but to enhance damages? And yet the jury are told not to give damages for such words; at most, then, they are given to prove malice, which was before sufficiently proven. There is certainly less danger in proving words spoken two years before, for which no action can be brought, than words spoken subsequently, and after suit brought, for which another action may be sustained. Upon authority, however, such words were properly received. In *Thomas* v. *Croswell*, Chief Justice Spencer doubts the propriety of proving subsequent libels, yet such evidence was given in that case, and a new trial was refused, thereby giving sanction to the receiving of such evidence. It does not distinctly appear, however, in that case whether the subsequent publications were libellous or not. 5. Evidence was admitted to prove the plaintiff's general character. In general, such evidence is improper, unless the defendant has attempted to impeach the plaintiff's character, 2 Stark. Ev. 370, 869; 5 Pick. 246; and in this case the judge gave as a reason for receiving the evidence, that the plaintiff's reputation had been in some measure attacked by the evidence produced by the defendant; in that point of view it was proper.

I am of opinion that a new trial should be denied.