By the Court,

Nelson, Ch. J.
The' imputation upon the character of the plaintiff contained in the article taken from the Chicago American, fully bore out the sense attributed to it in the declaration, viz : that the plaintiff had been guilty of forgery, and of breaking jail while confined on suspicion of the offence. And the commentary of the defendant, impliedly at least, tended to affirm the truth of the *513 charge; for though he expressed disbelief in the truth of the insinuation that the plaintiff was the person who had just been appointed receiver of the public moneys, yet he was altogether silent as to the calumny in question—thus leaving it to be inferred that this part of the publication was undeniable.
It is made a point in this case and was insisted upon in argument, that the editor of a public newpaper is at liberty to copy an item of news from another paper, giving at the same time his authority, without subjecting himself to legal responsibility, however libellous the article may be, unless express malice be shown. It was conceded that the law did not and ought not to extend a similar indulgence to any other class of citizens; but the counsel said that a distinction should be made in favor of editors, on the ground of the peculiarity of their occupation. That their business was to disseminate useful knowledge among the people—to publish such matters relating to the current events of the day happening at home or abroad, as fell within the sphere of their observation, and as the public curiosity or taste demanded—and that it was impracticable for them at all times to ascertain the truth or falsehood of the various statements contained in other journals. We were also told that if the law were not thus indulgent, some legislative relief might become necessary for the protection of this class of citizens. Undoubtedly, if it be desirable to pamper 'a depraved public appetite or taste, if there be any such, by the re-publication of all the falsehoods and calumnies upon private character that may find their way into the press—to give encouragement to the widest possible circulation of these vile and defamatory publications, by protecting the retailers of them—some legislative interference will be necessary; for no countenance can be found for the irresponsibility claimed in the common law. That reprobates the libeller, whether author or publisher, and subjects him to both civil and criminal responsibility. His offence is there ranked with that of the receiver of stolen goods, the perjurer and suborner *514 of perjury, the disturber of the public peace, the conspirator, and other offenders of a like character.
It was decided in Dale v. Lyon, (10 John. R. 447,) that the publisher is responsible to the party libelled, notwithstanding the article is accompanied with the name of the author; and this, for reasons the most cogent and unanswerable. I adopt the language of Ch. J. Kent in that case, (p. 450:) “ Individual character must be protected, or social happiness and domestic peace are destroyed. It is not sufficient that the printer, by naming the author, gives the party grieved an action against him.” “The author may be some vagrant individual who may easily elude process; and if found, he may be without property to remunerate in damages. It would be no check on a libellous printer, who can spread the calumny with ease and with rapidity throughout the community. The calumny of the author would fall harmless to the ground, without the aid of the printer. The injury is inflicted by the press, which, like other powerful engines, is mighty for mischief as well as for good.”
In Mapes v. Weeks, (4 Wend. 659,) the circumstance of giving the name of the person who had communicated the slanderous charge to the defendant was not allowed, even in mitigation of damages; and such is the settled law of this court. (Inman v. Foster, 8 Wend. 602.) The act of publication is an adoption of the original calumny, which must be defended in the same way as if invented by the defendant. The republicátion assumes and endorses the truth of the charge, and when called on by the aggrieved party, the publisher should be held strictly to the proof. If he chooses to become the endorser and retailer of private scandal, without taking the trouble of enquiring into the truth of what he publishes, there is no ground for complaint, if the law, which is as studious to protect the character as the property of the citizen, holds him to this responsibility. The rule is not only just and wise in itself, but if steadily and inflexibly adhered to and applied by courts and juries, will greatly tend to the promotion of *515 truth, good morals and common decency on the. part of the press, by inculcating caution and enquiry into the truth of charges against private character before they are published and circulated throughout the community.
It is insisted that the judge erred in rejecting the article published in another newspaper approving of the supposed appointment of the plaintiff to the office of receiver of public moneys, and alluded to in one part of the libel It was rejected as irrelevant and immaterial to the question before the court; and of the correctness of this decision there can be no doubt. The approval or disapproval of that paper had nothing to do with the calumny complained of; nor did that fact afford any excuse for, or explanation of, the charges put forth in the publication in question. The approval of the one, certainly afforded no apology for any slanderous commentary which the other might choose to make in reply. The plaintiff had no connexion with either press, and was not therefore responsible for either commentary.
The counsel for the defendant offered in evidence, by way of mitigation, an article subsequently published in his paper, commenting somewhat at large upon the same general subject to which the libel related; and also containing, what purported to be a letter from the plaintiff’s attorneys, calling for a retraction of the charges before made. The judge rejected the offer, at the same time observing, however, that he would admit the evidence, if the counsel for the defendant would prove that the letter had been actually addressed to the defendant by the attorneys.
If this article had contained a full and unqualified withdrawal of the charges in the libel, unaccompanied with other offensive or libellous matter, and had been intended and published as some slight atonement for the injury done, I think it would have been admissible for the purpose for which it was offered. It would have afforded proof not only of a disposition to repair the wrong inflicted, but of actual reparation to some extent.. The defendant should have the benefit of a “ locus penitentim,” when evidenced by an *516 honest endeavor and in a way to make atonement to as great an extent as is within his power. But the article in question ' contained no recantation; and besides, it was filled with additional injurious and calumnious imputations upon the plaintiff’s character. If the defendant had become satisfied that the charges which he had unwittingly copied were unfounded, common honesty and a decent respect for the rights of the injured party called for an unqualified withdrawal. Hesitation, lurking insinuation, an attempted perversion of the plain import of the language used in the libellous article, or a substitution of one calumny for another, only aggravate the original offence and show a consciousness of the wrong done without the manliness or magnanimity to repair it. A libellous publication may be inadvertently admitted into the columns of a newspaper, an<^ the editor chargeable only with mistake or indifference to the truth; but if when advised of his error, he hesitates to cor-, rect it, the case rises to one of premeditated wrong, of settled and determined malignity towards the party injured, which should be dealt with accordingly. There is no longer room for any indulgence towards the act, and the party becomes a fit object for exemplary punishment. All the charities of the law give way at such a prostitution of the public press.
I am satisfied the ruling of the learned judge at the circuit was right, and that a new trial should be denied.
New trial denied.