Bowen *v.* Hall.

## SILAS BOWEN *v.* CALEB HALL.

Under the general issue, in an action for speaking slanderous words, the defend-
ant may prove, in mitigation of damages, the general bad character of the de-
fendant in respect to the offence imputed, but not particular instances of mis-
conduct, nor rumors and reports, unless they are so general, that they have
affected the general character; and in this respect it makes no difference,
whether the general issue is pleaded alone, or whether, in connection there-
with, the truth of the publication is pleaded; but in the latter case the evidence,
should not be allowed to have any effect upon the issue formed upon the special
plea, but be confined to the question of damages, as if no special plea had been
filed.

In this case, which was for speaking slanderous words imputing perjury, the de-
fendant pleaded the general issue, and also pleaded in justification the truth of
the words spoken; and, after having given evidence tending to prove the alle-
gations in his pleas in justification, it was held, that he might prove under the
general issue, in mitigation of damages, that the general character of the plain-
tiff, in respect to being a perjured man, was bad, and that his general character
was, that he was a dangerous witness and his statements under oath were not
to be relied on.

THIS was an action on the case for speaking slanderous words,
imputing to the plaintiff the crime of perjury. The defendant
pleaded the general issue, and also pleaded four several pleas in jus-
tification, setting forth with particularity instances in which he
alleged the plaintiff had, upon the trial of certain issues, committed
perjury. To the pleas in justification the plaintiff replied, admitting
the trials of the issues alleged, but *de injuria absque residuo causa
&c.* Trial by jury, September Term, 1845,—WILLIAMS, Ch. J.,
presiding.

On trial, after evidence had been given under the general issue,
both by the plaintiff and defendant, and also after evidence had been
offered and received in support of the several pleas in justification,
the defendant offered evidence, that the general character of the
plaintiff, in respect to being a perjured man, was bad; and that his
general character was that of a dangerous witness; and that his
general character was, that his statements under oath as a witness
were not to be relied upon; and that in this respect his general
character was bad;—to all which evidence the plaintiff objected, and
it was excluded by the court.

The jury returned a verdict in favor of the plaintiff. Exceptions by defendant. After verdict the defendant filed a motion in arrest of judgment for insufficiency of the declaration; which motion was overruled by the court.

*E. F. Hodges* for defendant.

1. The plaintiff assumes, that the testimony offered and rejected is inadmissible in law. The plaintiff has declared against the defendant for the malicious defamation of his good name; and there seems to be a palpable absurdity in denying to the jury all the evidence, that tends to aid them in their inquiries concerning the existence of this malice and the value of this good name. In ordinary cases reports are rejected, as belonging to a class of evidence proscribed for its uncertainty. In actions for slander the same is true, if they are offered as evidence of facts; but, when offered *as the fact itself*, the reason for their rejection fails. The plaintiff's reputation, as having been guilty of the crime charged in the slanderous words, is admitted in evidence in England, under the general issue, upon the ground that every thing may be proved under that plea, which falls short of proof of the truth of the charge. *Earl of Leicester* v. *Walter*, 2 Camp. 251. ———— v. *Moore*, 1 M. & S. 284. Stark. on Sl. 84. 3 Steph. N. P. 2578. *Richards* v. *Richards*, 2 M. & Rob. 557. Peake's Ev., App. 43. *Williams* v. *Callender*, Holt 307. *Mullet* v. *Hulton*, 4 Esp. R. 248. The same doctrine has been held in this country, in part of the states;—as in Pennsylvania, in *Williams* v. *Mayer*, 1 Binn. 92; in Kentucky, in *Middleton* v. *Calloway*, A. K. Marsh. 372; in South Carolina, in *Bulford* v. *Leary*, 1 Nott & McCord 268; and in Connecticut, in *Hyde* v. *Bailey*, 3 Conn. 466, and *Treat* v. *Browning*, 4 Ib. 414. It is said to be questioned in Massachusetts and New York; but we believe the judicial tribunals of those states admit general reputation to be proved in mitigation of damages; and all the cases agree in this, that when the slander charges, that the plaintiff was guilty of a specific act, which is a crime, general reputation of his guilt in this particular is not admissible; but when the slander charges generally a crime, general reputation of the plaintiff's character, in respect to such crime, is admissible. *Stone* v. *Varney*, 7 Met. 86. *Wolcott* v. *Hall*, 6 Mass. 514. *Alderman* v. *French*, 1 Pick 1. *Bod-*

30

*well* v. *Swan,* 3 Pick. 376.   *Foot* v. *Tracy,* 1 Johns. 45.   *Spring-stien* v. *Field,* Anthon's Cas. 185.   *Matson* v. *Buck,* 5 Cow. 499.
*Brooks* v. *Bemiss,* 8 Johns. 455.   *Root* v. *King,* 7 Cow. 629.
*Mapes* v. *Weeks,* 4 Wend. 659.   *Gilman* v. *Lowell,* 8 Wend. 579.
*Inman* v. *Foster,* Ib. 602.   All the decisions fall within the rules of
pleading and evidence universally acknowledged.   The plaintiff
sues for an injury to his *character* in respect to the crime reputed
in the slander.   General reputation as to the specific crime is that
*character,* and to examine that has not been denied.   Particular
acts are not admissible, because the plaintiff has not come prepared
to meet them.

The case of *Jones* v. *Stevens,* 11 Price 235, is inapplicable, and
is, of itself, without foundation in authority or reason.

3. But it is said, that the defendant has foreclosed his right to in-
troduce this testimony, by pleading a justification.   There is no case,
where the courts have excluded testimony, otherwise admissible un-
der the general issue, because of the plea in justification; and all
the *dicta* upon this subject arise in cases where the testimony offered
was in itself inadmissible, as proving the truth of the charge,—
which can only be done under a special justification.   Other cases
expressly admit this testimony.   1 Phil. Ev. 187.   *Coleman* v.
*Southwick,* 9 Johns. 46.   *Hotchkiss* v. *Lathrop,* 1 Johns. 288.
*King* v. *Root,* 4 Wend. 139.

*Thrall & Pond* for plaintiff.

The defendant pleaded the general issue and in justification.
The verdict of the jury establishes the falsity of the words spoken.
The special pleas, therefore, were an aggravation and reiteration of
the original slander.   It was not admissible, therefore, for the defend-
ant to give evidence of general character under those pleas, to repel
the presumption of malice, to reduce damages; for the pleas were an
admission of malicious intent.   The evidence, then, could have had
no possible effect, unless it were to show the plaintiff's general bad
character.   For this purpose it was improper for the defendant to
inquire into the plaintiff's character as to any particular vice.   If it
were admissible for the defendant to introduce evidence of character
at all, it should be with regard to the plaintiff's *general character.*
*Root* v. *King,* 7 Cow. 622. . *Paddock* v. *Salisbury,* 2 Ib. 811.

*Matson* v. *Buck,* 5 Ib. 499. *Purple* v. *Horton,* 13 Wend. 9. *Wolcott* v. *Hall,* 6 Mass. 518. *Bodwell* v. *Swan,* 3 Pick. 376. *Alderman* v. *French,* 1 Ib. 1. *Snowdon* v. *Smith,* 1 M. & S. 286, n. *Jones* v. *Stevens,* 11 Price 235. *Mapes* v. *Weeks,* 4 Wend. 659.

The opinion of the court was delivered by

Davis, J. The several counts in the plaintiff's declaration all charge, that the defendant, on two different days in September, 1843, in words addressed to, and spoken of, the plaintiff, accused him in general terms of the crime of perjury, being a perjured rascal, &c. The defendant, at the September Term, 1844, pleaded only the general issue, and upon trial a verdict passed for the plaintiff. On review, the defendant, at the April Term, 1845, by leave of the court, filed four special pleas in bar, all averring that the plaintiff, on the trial of certain issues pending before different judicial tribunals, at different times, on being called and sworn as a witness, committed wilful and corrupt perjury. Replication *de injuria absque tali causa* and issue closed to the country. On trial of these several issues at the September Term, 1845, the plaintiff again obtained a verdict for damages and costs; after which and before judgment a motion in arrest, founded on supposed defects in the plaintiff's declaration, was filed; but this point has not been insisted upon in argument.

The important question in the case arises upon the exclusion, by the county court, of evidence that the general character of the plaintiff, in respect to the crime imputed in the alleged slander, was bad,—that his general character was, that he was a dangerous witness, and his statements under oath were not to be relied upon, &c. It is a question of no little practical importance; and, considering the diversity of views entertained respecting it in different courts and by different Judges, it must ·be regarded as one not free from difficulty. This difficulty is enhanced by a consideration of the greatly diversified forms, in which it has been presented in different reported cases.

If the doctrine laid down in the case of *Jones* v. *Stevens,* 11 Price 235, in the English court of Exchequer, be sound, especially if we adopt to the full extent the reasoning of Baron Wood, we should be compelled to hold, that in no state of the pleadings, and under

no circumstances, could evidence in disparagement of the plaintiff's character, either generally or in reference to the matter of the slander, be introduced to mitigate damages. This would be in direct conflict with the cases of *Earl of Leicester* v. *Walker*, 2 Camp. 251, and —————— v. *Moore*, 1 M. & S. 284, in both of which, rumors and reports unfavorable to the plaintiff, in respect to the particular matter imputed, were received, on the ground that they contradicted the usual averments in the plaintiff's declarations, that they were of good name and fame, and had never been suspected of the particular offences imputed;—the doctrine of which cases received the sanction of the whole court of King's Bench. Two cases from Holt's N. P. Cas; *Williams* v. *Callender*, 307, and *Mills* v. *Spencer* 534, are to the same effect. Baron WOOD argues strenuously, that these preliminary allegations are unnecessary, and only serve to incumber the case to no purpose. This is no doubt correct. They are regarded as inducement merely, and not traversable. *Coleman* v. *Southwick*, 9 Johns. 45. If omitted, however, it would not affect the right of the defendant, in any case, when otherwise he has that right, to put into the case evidence of bad character to reduce the damages. The case of *J'Anson* v. *Stuart*, 1 T. R. 748, in King's Bench, though much earlier than those above cited, was relied upon as affording strong confirmation of the views of the Court of Exchequer. It seems to me, however, not to be at all in conflict with the cases decided at a later period. The question arose upon a special demurrer to a special plea, alleging that the plaintiff was connected with and belonged to a gang of swindlers,—as had been charged in the published libel. The court allowed the demurrer, upon the ground that the defendant could not justify in such a general manner, that it was necessary to specify the acts of fraud and swindling, of which the plaintiff was guilty,—that he must be supposed to be able to do this, or he ought not to have made the charge. All this, assuredly, has nothing to do with the question in controversy.

It may be true, as insisted by Baron WOOD, that in *Jones* v. *Stevens*, the several pleas in bar were bad, and ought to have been demurred to for the same and for other reasons. They were substantially but mere amplifications of the charges contained in the original libel, which imputed dishonorable and disreputable practices as an attorney, in certain suits, in connexion with one Hammond, who

was convicted and transported. In the present case it is not pretended, that the defendant's several pleas are open to a similar objection. Unlike those in the Term Reports, and in Price, they are specific, direct and positive, in imputing to the plaintiff wilful and corrupt perjury; and if they could have been sustained by proof, the result must have been a verdict for the defendant. The plaintiff could not have opposed to them any other answer than he did. The verdict of the jury has established their falsity. From what has been thus far said, it appears, that the different courts of highest jurisdiction in England entertain opposite views in relation to this question. Notwithstanding the perfect unanimity and confident tone with which the Barons announced the conclusion they arrived at, it seems from several decisions since made at *Nisi Prius* in England, that the case of *Jones* v. *Stevens* is not regarded as having settled the law there. 3 Stephens' N. P. 2578, n. (29.)

In New York and Massachusetts many cases have been decided on this subject, which, though very far from running parallel with each other,—those in the former state being more severe and stringent in restraining the latitude of defence than those in the latter,—yet agree in this, that there is no fixed horizontal rule of damages, applicable to any given case of libel, or slander, by which every party, whatever his general character and standing may be, shall recover an equal compensation in damages. The opinions of the learned Barons in the case of *Jones* v. *Stevens* seem to countenance such a doctrine; but I do not find any case going to that extent in this country. If any variation is allowable, although, until the contrary be shown, it may be presumed that the plaintiff's character is irreproachable, and therefore proof in support of it is neither necessary, or admissible, still it must be competent for the defendant to show, in mitigation, that the plaintiff's character, either generally or in reference to the matter imputed, is not unexceptionable, and that consequently the damage sustained is not as great as it otherwise would be; or else, in accordance with the early notions as to the peculiar province of juries, they are to be left to act upon such information, as they may happen to possess from being of the vicinity. This, in reference to general character, was decided in *Paddock* v. *Salisbury*, 2 Cow. 811, and was recognised by Savage, Ch. J., in

*Root* v. *King*, 7 Cow. 632. No evidence of that kind was, however, offered in the last case except as to intoxication,—the matter imputed.

In the early case of *Foot* v. *Tracy*, 1 Johns. 46, the four Judges present were equally divided upon the question, whether evidence bearing upon the general character of the plaintiff, not only as a lawyer, but as a man, should have been received, KENT, Ch. J. and THOMPSON, J., being in the affirmative,—LIVINGSTON, J., and TOMPKINS, J., in the negative, the latter delivered no opinion. THOMPSON, J., did not doubt but that general reputation, in respect to the matter charged in the libel, which in this case was very indefinite, but referred to the plaintiff as an attorney, or commissioned pettifogger, was admissible; but hesitated whether the plaintiff's character as a man was open to impeachment. He however, finally became convinced it was. The Chief Justice had no scruples upon that point,—holding that "the jury, in assessing the damages, must take into consideration the general character, standing and estimation of the plaintiff in society; as it could not be pretended, that every plaintiff was entitled to an equal sum, for the worth of his character." LIVINGSTON, J., assuming what all modern authorities are agreed in, that, under a plea of the general issue alone, the truth of the matter charged could not be shown in mitigation of damages, goes on to say, that admitting evidence of this kind would be only another way of making a jury believe that the defendant had published nothing but the truth. Under that plea,—and no other was put in,—it is unquestionably true, that it was not competent for the defendant to show, by direct proof, for any purpose, the truth of the publications; but the evidence offered did not propose to do this, directly, or otherwise. SPENCER, J., having been of counsel in the case, gave no opinion; but subsequently at *Nisi Prius*, in *Springstien* v. *Field*, Anth. N. P. 185, admitted such evidence,—entertaining no doubts about it.

In *Paddock* v. *Salisbury*, 2 Cow. 811, the slander consisted in charging the plaintiff with arson and theft. Plea, the general issue. The Judge, who tried the case, admitted evidence impeaching the plaintiff's general character, "as a virtuous, honest man, or otherwise." The supreme court, on a motion for a new trial, held the evidence admissible. The same general doctrine is recognised by

Ch. J. Savage, in *Matson* v. *Buck*, 5 Cow. 499; the defendant, however, was not allowed to blast the character of the plaintiff, by proving that "it was generally reported and believed in the neighborhood," that the plaintiff had defrauded and cheated the state, as superintendent and collector of the Erie Canal,—which was the slander complained of. The case of *Wolcott* v. *Hall*, 6 Mass. 514, was cited and approved of, and afforded satisfactory ground for the decision made. In this last case, where theft was imputed, the defendant pleaded in bar, as in the present case, the truth of the words spoken, setting forth distinctly three different instances of theft, of different articles, and from different persons. Failing to produce evidence in support of these pleas, the defendant offered to show, in mitigation of damages, the existence of reports before the speaking of the words, that the plaintiff was guilty of theft, and particularly the sayings of two of the three persons, from whom, as the pleas alleged, the plaintiff had stolen, importing the fact. This evidence was rejected, as the supreme court said properly. Ch. J. Parsons, in delivering the opinion, said, evidence of the plaintiff's general character would have been admissible, but was not offered, otherwise than by these reports. In *Bowdish* v. *Peckham*, 1 D. Ch. 144, the same doctrine was held. The defendant had filed, with the general issue, a notice that he should prove, the truth of the words spoken, in defence. Evidence was offered, but rejected on account of insufficiency of the notice. The same evidence was then offered in mitigation; but the court said it could not be received. It was agreed, that evidence of general character might. Precisely similar ground was taken by the supreme court of Massachusetts in *Alderman* v. *French*, 1 Pick. 1. The defendant's special plea, setting forth the truth of the words, was demurred to, because it did not set forth with sufficient distinctness the truth of the imputation,—which was adultery with a particular person. The demurrer prevailed. The defendant then proposed to prove the same facts in mitigation, but the evidence was rejected.

In *Bodwell* v. *Swan et ux.*, 3 Pick. 376, the defendants under the general issue, with a view to remove the presumption of malice, offered to prove various instances of improper conduct with married and unmarried men, the plaintiff being an unmarried female, and the charge being adultery and fornication; but all such evidence was

rejected, though evidence of the rank and general character of the plaintiff was introduced without objection. PARKER, Ch. J., said, " We take the rule to be, that the general bad character of the plaintiff may be shown, because its goodness is principally relied upon as a ground for damages." It is not distinctly stated, whether the evidence as to general character applied as well to character in respect to chastity, as in other respects; but in the case in favor of the same plaintiff against *Osgood*, heard at the same Term in the supreme court, though not tried at the same time below, it is expressly stated, that much evidence on both sides was introduced in respect to the plaintiff's character for chastity. See *Recford* v. *McLuny*, 1 Nott & McCord 268; *Mapes* v. *Weeks*, 4 Wend. 659; *Purple* v. *Horton*, 13 Wend. 9. The case of *Flint* v. *Clark*, 13 Cow. 361, goes farther than *Bodwell* v. *Swan*. See 2 Greenl. Ev. 424, § 275.

The case of *Root* v. *King*, already referred to, was regarded at the time as one of much importance, and was ably discussed by the counsel and court. As I have remarked, no attempt was made to impugn the general character of the plaintiff. The court agreed, that the defendant was at liberty to make such an attempt, had their been grounds for it; but they lay down the position broadly, that the character of the plaintiff, in the capacity in which he is slandered, cannot be inquired into, unless the plaintiff chooses to direct the inquiry into that channel. The Judge below, BETTS, had ruled, that intemperate habits might be shewn in mitigation, provided they were of the kind and degree charged in the libellous publication. This is disapproved of by the Chief Justice, even without the qualification, under a plea of justification. Under the general issue merely, he admits there are recent English cases, which would allow the evidence,—but expresses no opinion respecting it. . Believing as I do, that in accordance with the well considered case of *Stone* v. *Varney*, 7 Met. 86, and cases decided in Ohio, North Carolina, Kentucky, and Indiana, there is no good ground for limiting the right of defence, under the general issue, in consequence of the defendant spreading upon the record a plea, averring the truth of the words, the reasoning of the judge seems not to be sustained by the case to which he refers. The true distinction, it seems to me, respects rather the nature and character of the evidence, relied upon by way of impeachment than the inquiry, whether the character, in the

Bowen *v.* Hall.

point in question alone may be investigated. Ch. J. Parsons' opinion in *Wolcott* v. *Hall*, specially referred to, certainly affords no support to the views advanced. Nothing there said implies that the plaintiff's character, in respect to theft, might not have been shown, in the same general way that a witness' character for truth may be shown,—not by descending to particular instances, but by showing generally the estimation in which he was held in that respect by his neighbors and the public. It was the attempt to blast the reputation of the plaintiff by *particular reports*, which was condemned, and this upon the ground generally recognized, that the plaintiff, though he may be presumed to be always prepared to meet imputations upon his character generally, would be surprised by mere reports, or particular instances of misconduct.

So, too, in *Bodwell* v. *Osgood* and *Bodwell* v. *Swan* we have a practical illustration of this distinction; for while much evidence was adduced to show the plaintiff's general character for chastity, particular instances of misconduct were not allowed to be proved. This is the doctrine in Massachusetts. Mr. Greenleaf, however, shows that in other states, particularly Connecticut, Pennsylvania, Maryland, Kentucky and South Carolina, as well as in England, general reports and suspicions are received in mitigation; while in Massachusetts, New York and Virginia they are not. 2 Greenl. Ev. § 275, and n. (1.) Stark on Slander, 84, n. (1.) *Young* v. *Bennett*, 4 Scam. 43.

Perhaps the case of *Inman* v. *Foster*, 8 Wend. 602, furnishes a test as unexceptionable as any, and as little subject to practical misconstruction, namely, that general reports are not to be received, unless they have affected the general character. The plaintiff was allowed to introduce evidence of good character, by way of answer to evidence on the other side, impeaching his character generally in respect to the matter imputed. Thus far, declarations, as usually framed and as framed in this case, obviously invite scrutiny into the plaintiff's character. It cannot be said, therefore, if met by proof for the question of damages, that he is taken by surprise. It may be true, as insisted by Baron Wood in *Jones* v. *Stevens*, that these prefatory allegations are mere inducements, not traversable, and wholly unnecessary. If they are put forward, however, as a ground for enhanced damages, it would be strange, if they could not be de-

31

nied. They should be met by evidence properly adapted to the points presented, in a general form. They neither require nor admit of special answers by plea.

Although at an early period it was held otherwise, it is now universally agreed, that if the defendant would insist upon the truth of the words in defence, he must plead it, or give notice of it, and that he cannot be allowed, under the general issue, to avail himself of such matter, to diminish the damages. Being properly pleaded and shown in proof, the truth, in libel, or slander, is always a perfect defence to the action. It cannot be used for any subordinate purpose. It has been urged with much force, particularly by Ch. J. Savage in *Root* v. *King*, that facts and circumstances, which tend to induce a belief of guilt, ought not to be allowed indirectly in mitigation, when they cannot be shown direcly by way of defence. The argument doubtless has weight, so far as it is pointed against the introduction of particular facts, or rumors and reports, tending to show the plaintiff guilty of the particular matter charged. It has little, or none, when applied to general evidence, affecting the plaintiff's character, the very introduction of which presupposes the defendant's inability to prove his imputations true. With the qualifications and restrictions with which we are disposed to admit evidence of this kind, no settled maxims of law or rules of pleading are violated. Here the evidence offered and excluded had no relation to the specific charges of false swearing, as embodied in the several pleas in bar. The defendant had failed to prove these ; his guilt, and consequent responsibility for some damages, was admitted by the offer. He merely sought to limit the recovery to the damages actually sustained. It was stated in different forms, but, in substance, he proposed to show, that the plaintiff's character, as a witness under oath in a court of justice, was bad,—that he was a dangerous witness, and not to be relied upon. What the proof would have been we cannot anticipate. We are satisfied from authority and reason it should have been received.

In *Stone* v. *Varney*, already cited, Dewey, J., delivered a very full and elaborate opinion. The libel imputed heartless cruelty, on the part of the plaintiff, to his child. The general issue was pleaded, and notice given that the defendant would show in defence, that the charge, if sustained by proof, was true. Evidence was offered

and admitted, that previous to the publication of the libel the general reputation of the plaintiff in the community where he lived, as a man of moral worth, was bad. The authorities were extensively reviewed and commented upon, and in conclusion the learned Judge pronounced in favor of the admission of the evidence, as applicable to the question of damages, under the general issue alone. He supposes the same latitude should be allowed, whether the general issue alone is pleaded, or in connection therewith the truth of the publication is pleaded. In the latter case the evidence should be allowed to have no effect upon the issue formed upon the special plea; but be confined to the question of damages, as if no special plea had been filed. This is, I apprehend, the true doctrine. With this exception, the general doctrine of the case would not be questioned even in New York.

In *Sawyer* v. *Hopkins*, 9 Shepley 269, where the truth was pleaded without the general issue, the plaintiff was allowed to give evidence of the extent and degree of malice, to enhance damages, and it was doubted, whether the defendant was precluded from adducing counter evidence. *McNutt* v. *Young*, 8 Leigh 542, is a case almost precisely like the present. The slander imputed perjury; the pleas were the general issue and a justification; evidence of the general bad character of the plaintiff for veracity under oath was offered and rejected; and the supreme court were of opinion it ought to have been received. I find several cases in Indiana, substantially to the same effect. In *Saunders* v. *Johnson*, 6 Blackf. 50, where the crime imputed was perjury, and a justification was pleaded, it was held, that mere rumors and reports that the plaintiff had committed the crime could not be received; yet, like *Inman* v. *Foster*, it is assumed, that if the reports had been of a nature to affect the plaintiff's general character, in respect to the matter imputed, they might very properly have been shown in reduction of damage. See *Burke* v. *Miller*, Ib. 155, where, by way of proving the plaintiff's bad character, the defendant was not allowed to go into facts tending to show the charge true. *McCabe* v. *Platter*, Ib. 405, is a case strongly resembling those in 3 Pick., already cited. The slander was of the same nature,—the plaintiff an unmarried female,—the pleas the same in substance, and the defendant was allowed to show the plaintiff's general character as to chastity.

It is unnecessary to cite farther cases on this subject. We are clearly satisfied, that the evidence offered was admissible, under the plea of not guilty, with a view to the question of damages; and that the circumstance, that the defendant attempted a justification, on the ground that the charge was true, ought not to be allowed to abridge, in any degree, his rights under the general issue.

The judgment of the county court must therefore be reversed and a new trial granted.