### Fitch & Lozee *vs.* Beach.

Where there is an agreement for the sale of an ark load of lumber, a portion landed, and the landing of the residue suspended until an inspector can be procured to measure it, and the vendor after waiting a day for an inspector, reloads the portion landed and goes away with the lumber, an action of *trover* does not lie against him at the suit of the vendee.

This was an action of *trover*, tried at the Albany circuit in March, 1834, before the Hon. James Vanderpoel, one of the circuit judges.

The defendant had two arks of lumber at Albany which he agreed to sell to the plaintiffs, and accordingly took the lumber to their dock. A portion of it was unloaded from the arks and deposited on the dock, the parties themselves measuring it as it was taken out, until the quantity thus deposited amounted to 4381 feet, when it seems the taking out of the lumber was suspended for the purpose of procuring an *inspector of lumber* to attend to the measuring. This was on *Thursday* or *Friday*. On the latter day or the next day, the defendant complained to the plaintiffs, of the detention he suffered for the want of the attendance of an inspector, and was told that it was then a busy time, and it was not uncommon to be obliged to wait three or four days, or a week for a meas-

urer, unless the parties themselves measured the lumber. On Saturday evening the defendant reloaded the lumber and went off with it. The lumber which had been landed was of the *fourth quality*, and the price agreed on between the parties for lumber of that quality was $13 per 1000 feet. Upon this state of facts the plaintiffs brought their action of *trover*. There was no proof of payment or tender of payment for the quantity delivered. The counsel for the defendant moved for a *nonsuit*, insisting that the action could not be maintained without proof that the price had been paid or tendered, or that the whole quantity of the lumber had been delivered. The judge granted the nonsuit, which the plaintiffs now moved to set aside.

*A. Taber*, for the plaintiffs.

*S. Stevens*, for the defendant.

*By the Court*, BRONSON, J. The question in this case is not, whether there was such an *executory* contract for the sale of the lumber to the plaintiffs, as would entitle them to an action against the defendant, for the non-performance of the agreement on his part; but whether there was such an *executed* contract of sale as passed the title of the property. The contract to sell did not change the property in the goods, for two reasons: first, something remained to be done as between the vendor and vendees, to wit, assorting and measuring the lumber for the purpose of ascertaining the quantity of each description, contained in the arks; and second, the price of the goods exceeded fifty dollars, and the agreement was consequently within the statute of frauds, 2 *R. S.* 136, §3. That the title does not pass where any thing remains to be done between the parties for the purpose of ascertaining either the price or quantity of the article sold, is so well settled that cases hardly need be cited in support of the doctrine. *Rapelye* v. *Mackie*, 6 *Cowen*, 250. *Ward* v. *Shaw*, 7 *Wendell*, 404. *Outwater* v. *Dodge*, 7 *Cowen*, 85. The agreement in this case was to sell two ark loads of lumber, composed of different qualities. For the fourth quality the plaintiffs were to pay

$13 per thousand feet; how much was to be paid for the other descriptions did not appear on the trial. Assorting and measuring the lumber was evidently a necessary act for the purpose of ascertaining how much there was of each quality, and how much the plaintiffs were to pay. Until this was done the title did not pass, and the plaintiffs could not maintain trover. *M'Donald* v. *Hewitt,* 15 *Johns. R.* 349.

But it was contended on the argument, that as to the lumber which was measured and placed upon the dock, the contract was completely executed; and it was for the recovery of that portion of the property, that this action was brought. What were the facts ? The contract was entire for the sale of all the lumber on board the two floats. The arks were taken to the plaintiff's dock, and 4381 feet of the fourth quality was measured by the parties and placed upon the dock. This was on Thursday or Friday in the week. The work of unlading and measuring was then suspended for the want of an inspector. The defendant repeatedly urged to have the lumber measured, and complained of being detained for want of a measurer. He was told that it was a common thing to be obliged to wait three or four days or a week for a measurer. Things remained in this situation until Saturday evening, when the defendant reloaded the lumber which had been placed upon the dock, and took the whole to another market. It was proved that he said, after his return to Ithaca, that he had suspicions that the plaintiffs were playing off about an inspector. Whether all of the fourth quality of the lumber had been measured does not appear, nor is that perhaps very material. The contract was for the sale of all the lumber contained in the two floats, and neither party was bound to deliver or receive less than the whole quantity. The parties might, no doubt, sever the entirety of the contract; but this could only be done by their assent, which, like every other fact that is made the basis of a claim, must be established by proof. In this case, I think there was no evidence of such an assent. How does it appear that the plaintiffs themselves were willing to accept and pay for the part which had been measured, without also receiving the residue ? Possibly their willingness to do so may be inferred from the fact of their

bringing the present action. However that may be, there is not a particle of evidence from which it can be justly inferred that the defendant was willing to sell a part without the whole; but quite the contrary. When he became weary of waiting for an inspector, so as to complete the execution of an entire agreement, or suspicious that all was not right, he reloaded the part which had been measured, and took the whole to another market. The parties did not stop after measuring the four thousand feet, on the ground that any part of the contract had been consummated by a delivery, but for the want of an inspector to measure the residue of the lumber. Their intention was to proceed as speedily as possible to the complete execution of one entire agreement; and if the title to the four thousand feet in question passed to the plaintiffs, it must be on the ground that each particular board or piece of timber, as it was taken from the float and placed upon the dock, ceased to be the property of the seller and became the property of the buyer. Such a doctrine cannot be maintained. Measuring and placing the lumber upon the dock, was a part of the process of a delivery to the purchasers, but until the whole was measured it was not a complete surrender by the seller of his dominion over the property.

It is not denied that, on a contract to sell a large quantity of goods, if a part be delivered by the vendor and accepted by the vendee, the title to the particular parcel is as effectually changed, as though the whole contract had been executed. But such a consequence will only follow where there has been an actual change of the possession, control, or dominion over the property. Such is not this case. The defendant never parted with the possession, nor did he place the goods under the control of the plaintiffs.

Several cases were cited on the argument which have little to do with the one before the court. *Champion* v. *Short*, 1 *Camp, N. P.* 53, proves that if a man order several articles from a tradesman, he is not obliged to receive a part only of the goods; but if he accept of any one article forwarded, he is precluded from insisting that the contract was entire, and must pay for all the goods that were furnished. In *Bragg* v. *Cole*, 6 *J. B. Moore*, 114, the defendant, who had agreed for

the purchase of ten trees, felled and carried away seven of the number, and then refused to pay for them, according to the terms of the contract, until the others were delivered. The court held that he had abandoned the entirety of the contract; that it was his own fault that the remaining trees had not been taken away, and that the plaintiff was entitled to recover for the seven trees which had been delivered. In *Oxendale* v. *Wetherell*, 9 *Barn. & Cres.* 386, the defendant had received 130 bushels of wheat, on a contract for the purchase of 250 bushels, which he retained after the time for completing the delivery had expired. The court held that, although the contract was originally entire, the defendant having retained the 130 bushels delivered, was bound by law to pay for it. These cases prove, what no one will deny, that there may be a severance of an entire contract; but they do not establish any principle which will enable the plaintiffs to maintain this action.

There is another objection to this action. The plaintiffs neither paid nor tendered the price of the goods. When a contract of sale has been concluded, and nothing further remains to be done between the parties, the property of the goods and the risk of accident are transferred to the vendee, and the vendor is entitled to the price. But unless the sale was expressly made upon credit, the buyer can neither take nor sue for the goods, until he has either paid or tendered the price. This is a condition precedent implied in every contract for the sale of goods, where no day of payment is given. *Noy's Maxims*, 87, 88; *Mason* v. *Lickbarrow*, 1 *H. Black.* 363; *Clarkson* v. *Carter*, 3 *Cow.*84; *Tarling* v. *Baxter* 6 *Barn. & Cres.* 360; *Bloxam* v. *Sanders*, 4 *Barn. & Cres.* 941. This condition may be waived by the vendor; and if he makes an absolute delivery of the goods, without receiving the price, the property passes to the vendee. *Chapman* v. *Lathrop*, 6 *Cow.* 110; *Furniss* v. *Hone*, 8 *Wend.* 247. But to prove such a waiver, there must be an unconditional parting with the possession and control over the property; such an act as evinces that confidence was reposed, and credit given to the vendee. *Ward* v. *Shaw*, 7 *Wend.* 404; *Palmer* v. *Hand*, 13 *Johns. R.* 434. In this case, the defendant, Beach, never

parted with the possession or control over the property. He did no act from which it could be inferred that confidence was reposed in the vendee, or credit given for the money.

It was urged that payment was not demanded by the defendant. But payment or a tender of the price, was a condition precedent on the part of the vendees, and they could not make out a complete title, or such an absolute right to the possession of the goods, as would enable them to maintain this action, without showing a performance of the condition on their part. This is abundantly proved by the cases already cited. In *Topping* v. *Root*, 5 *Cow.* 404, the action was brought upon the contract of sale for not delivering a quantity of hops. A part of the goods had been delivered and payment received; and in an action for the non-delivery of the residue, it was held that the plaintiff was bound to aver and prove that he was ready to pay on receiving the goods.

The nonsuit was properly ordered, and the motion to set it aside must be denied.

New trial denied.