LAVINA KENNEDY *vs.* BETSY GIFFORD.

Where a slanderous charge is made which the unlearned would understand as imputing a crime, the action of slander lies, although in the nature of things such crime could not have been committed; unless it be shown that the charge was made only in the hearing of those who knew that the crime could not be committed.

After verdict, on a motion in arrest or on error, a declaration in slander will be held good, where the words are of doubtful meaning but capable of a slanderous sense although there be no averment beyond that of an intent to charge a specific crime; a stricter rule prevails where a demurrer is interposed.

The quo animo, the words charged as spoken, may be shown by evidence of conversations of the defendant relating to the original defamation, had subsequent to the commencement of the suit.

Reports or public reputation of the truth of the slander, or of kindred charges, are inadmissible in evidence.

THIS was an action of *slander*, tried at the Rensselaer circuit in March, 1836, before the Hon. JAMES VANDERPOEL, then one of the circuit judges.

The first count of the declaration, after the usual prefatory matter as to the good name of the plaintiff, and that she had never been suspected to have been guilty of the detestable and abominable *crime against nature*, stated that she resided with her father, Hugh Kennedy, that she had for a long time been sick, and that in such sickness had been attended by a physician of the name of Dorr; and that the defendant, maliciously intending to injure her in her good name, to, bring her into public scandal, and *cause it to be suspected and believed* that she had been and was guilty of such crime, in a certain discourse which the defendant had with divers citizens of and concerning the plaintiff, her sickness, and the attendance of Dr. Dorr upon her during such sickness, spoke and published certain words, setting forth a conversation between the defendant and another female substantially as follows—" Have you seen the old slut to-day?" " Who do you mean?" " Vina Kennedy." " Several persons have been seen at Kennedy's to-day, but the slut was not known from any of the rest." Have you not heard of the

story about her?"   "No—what is it?"   "I should·have
thought you would have heard of that story, for every body
knows that she has had a litter of pups by old Troop."   "I
have never heard of such a thing, do you believe that story?"
"What every body says, must be true."   "I should think as
you live so near, you would know if any such thing had taken
place."   "I have not visited there for some time.   Dr. Dorr
knows the particulars about it, as he was the physician, who
doctored the family.   She has been sick a long time; by
reason of this she is altered very much from what she used to
be.   I should not think she was the same person by her
talk."   "How many pups had she?"   "Some say *three*, and
some *five*.   Dr. Dorr did the business, and I expect he knows
all about it."   The count then, after setting forth the words
spoken, concludes in these words—thereby then and there
meaning, that the said plaintiff had given birth to a litter of
pups; that the said Jonathan Dorr (the physician) knew this;
and also thereby then and there meaning, that the said Lavina
Kennedy had been and was guilty of the detestable and abomi-
nable crime against nature.   There were three other counts
substantially like the first.   The defendant pleaded the general
issue.

On the trial of the cause the words were substantially
proved to have been spoken as alleged in the declaration,
and the plaintiff rested.   The defendant moved for a nonsuit
on the ground that the words spoken were not actionable.
The judge refused to nonsuit the plaintiff.   The defendant
then offered to prove by scientific men that it was physically
impossible that any issue or fruit should result from a sexual
connection between a *woman* and a *dog*.   The plaintiff's counsel
conceded the fact, and the defendant thereupon rested his de-
fence.   The plaintiff then called another witness and proved
that, since the commencement of this suit, in a conversation
between the witness and the defendant, the witness mentioned
to her how Kennedy's old dog had been frightened in a thunder
storm, and that the defendant then observed, "What will
Lavina do? old pup will not be able to do his duty."   This
evidence was objected to, but received by the judge.   The
defendant offered to prove that before the alleged speaking

NEW-YORK,
May, 1838.

Kennedy,
v.
Gifford.

NEW-YORK, of the words by her, a brother of the plaintiff had reported
May, 1838. that the plaintiff had had five pups, and that the story
was current in the neighborhood in which the parties resided :

Kennedy
v.
Gifford.

which evidence was objected to and rejected. The de-
fendant's counsel then requested the judge to charge the
jury that the admission of the plaintiff by her counsel,
that it was physically impossible that a woman should have
pups in consequence of a sexual connection with a dog,
and which had been offered to be proved, constituted a com-
plete defence to the action. The judge refused so to charge,
and instructed the jury that they would be authorized, from
the evidence in the case, to find that the defendant meant to
charge the plaintiff with the crime imputed to her, if they
should be of opinion that the natural meaning of the words
implied that the plaintiff had been guilty of such crime-
The jury found a verdict for the plaintiff with $500 damages.
The defendant moved for a new trial and in arrest of judg-
ment:

*S. Stevens & D. Buel, jun.* for the defendant.

*H. P. Hunt,* for the plaintiff.

*By the Court,* COWEN, J. We need go no farther than
*Goodrich* v. *Woolcott,* 3 Cowen, 231 ; 5 id. 714, S. C. on
error, which was extremely well considered, to see that the
declaration in the case at bar is good, and, of course, that
the words proved, which do not materially vary from the de-
claration, are slanderous. It was held in the case cited,
that a declaration containing words which, in common un-
derstanding, would import the crime against nature, preceding
and following them with an averment of the intent to
charge the plaintiff with a crime against nature, and that
they were so understood, was good. The words there
charged were more equivocal than those made use of in this
case. "The inquiry is not," says Mr. Justice Sutherland,
"whether the words could have been understood in any
other way; but whether that is the construction which
common persons would naturally put upon them." He

adds, "if the words were of doubtful signification, it was the province of the jury to determine in what sense they were used." It is not because the words *may* have a meaning different from what they import, or because they are of doubtful meaning, that the declaration must show specially such extrinsic facts as give them point; but when they are such as *cannot*, of themselves, be slanderous. At least this is so, on a motion in arrest of judgment, or on error. A simple allegation of false swearing is insufficient to convey the charge of perjury. There is nothing in the words to connect with them the idea of a judicial oath more than any other; therefore you must aver that the oath was taken in a judicial proceeding, and show that the conversation had allusion to it. The class of insufficient words, and how they are to be dealt with in declaring, was much considered in the late case of *Goldstein* v. *Foss*, finally decided by the exchequer chamber, reported in 1 Moore & Payne, 402, and several other books. They must be made significant by a statement of the proper extrinsic facts, a colloquium concerning those facts, and an innuendo connecting them with both. Per Bronson, J., in *Andrews* v. *Woodmansee*, 15 Wendell, 224. *A fortiori*, if the words have a cabalistical or local meaning which is slanderous, being in their ordinary sense decidedly innocent. On the other hand, if the words charged be *capable* in themselves of a slanderous sense, there is no need of any averment beyond the common one of an intent to charge the crime, especially after verdict. Stark. on Slander, 81, ed. of 1826. I know that this is put more strongly in cases of demurrer, where it is said the words, if they do not necessarily import a slander, or allude to the proper person, &c. must be brought up to that import or allusion by special averments. Nelson, C. J., in *Miller* v. *Maxwell*, 16 Wendell, 9, on the authority of Alexander, L. C. B., in *Hall* v. *Blandy*, 1 Younge & Jerv. 480, 489. But where there has been a verdict, and the motion comes in arrest, the case of *Goodrich* v. *Woolcott*, warrants the rule as laid down in Starkie. The averment in that case, at the end of the declaration, that the words meant and were understood to convey the charge of felony, are no

more than a common innuendo. The words were capable either of a guilty or innocent meaning.

In all this I am supposing the words in the case at bar to be weaker than they really are; for I would not be understood as admitting that they are doubtful in their import. They asserted a consequence which the hearers knew must have been intended to imply a felony, even supposing such hearers to have been perfectly acquainted with that law of nature which forbids the confusion of the species. The speaker either did not understand that law herself, and therefore charged a crime upon the plaintiff in unphilosophical language, or she did understand it, and preferred to insinuate the charge through a figure of speech. *Gorham* v. *Ives*, 2 Wendell, 534. To say that a murder has been committed upon A., and that B. *was the father of the crime*, would, taken literally, be impossible; yet could any one doubt that B. was intended as the murderer? or at least as an accessory?

But the defendant herself did not pretend that either hearer or speaker knew that the effect spoken of could not follow. Her counsel offered to prove by learned men that it could not, and the plaintiff's counsel admitted it. But the proof was irrelevant; it stopped short of showing that the hearers possessed the same degree of knowledge. It was the sense in which they understood the words upon which the jury were to pronounce. *Demarest* v. *Haring*, 6 Cowen, 76. None of them were inquired of. Had they been, I have no doubt how they would have answered. The case is different from a charge of an act in such words that the law of the land will not make it an offence; for every person is presumed to know that law.

The evidence offered and received, of the defendant's conversation with Sabrah Cook, which took place after the action was brought, is a striking illustration of the propriety with which such evidence has been allowed by the cases, to prove the *quo animo*, so long as the subsequent conversations were confined to the subject of the original defamation. 2 Phil. Ev. 246, 7th ed. 2 Sound. Pl. & Ev. 808, 9, marginal paging, or 381, 2, of Am. ed. of 1829. Savage, C. J., in *Inman*

v. *Foster*, 8 Wendell, 609. It is difficult to conceive of words more forcibly indicative of malice, of such withering influence upon the character of the plaintiff, or more harrowing to the feelings of a female whose moral sense was not totally depraved.

It is perfectly well settled that neither particular reports nor public reputation of the truth of the slander, nor of kindred charges against the plaintiff, are admissible. *Inman* v. *Foster*, 8 Wendell, 608, and the cases there cited.

Both the motion in arrest and for a new trial must be denied.