## ADAM HAGAN vs. CHARLES HENDRY.

Where a ruling is made by the court, and the party against whom it is made submits to it, without reserving, at the time it was made, the right to except, he cannot be allowed to except thereto at any subsequent stage of the trial.

In an action for a libel, where the pleadings are framed under the Act of 1854, ch. 112, the plea, that the defendant did not commit the wrong alleged, is a direct traverse, and puts in issue the malicious printing and publication, and the defamatory sense of the libel complained of.

Such a plea, under this Act, is equivalent, or nearly so, to the general issue at common law, under which the defendant could give in evidence any matter tending to deny or disprove any material allegation of the plaintiff, as the publishing of the words, the malicious intent, or the injurious consequences resulting from the act complained of.

What the defendant *said* at the time of the publication of the *libel*, out of the presence of the plaintiff, in explanation of the sense in which the words were used, or as showing want of malice, or a just occasion or authorized motive, is not admissible under such a plea.

In an action for a written or printed *libel*, the defendant is responsible for the meaning of the words as understood by the readers of it, and any explanatory words or declarations of the defendant, which cannot be known to all the readers of the libel, are inadmissible.

It is an unbending rule of evidence, that a party to a suit cannot offer in evidence his own declarations.

Any publication injurious to the social character of another, and not shown to be true, or to have been justifiably made, is actionable as a false and malicious libel.

Every publication injurious to character, is in law false and malicious, until

23     v.18

the presumption of falsehood is met by plea of the truth, or the presump-' tion of malice is removed by showing a justifiable occasion or motive.

At common law, where the truth of the charge is designed to be given in evidence, there must be a plea of justification; but a just occasion, or an' authorized motive, may be given in evidence under the general issue, or may be specially pleaded.

Assuming that the direct traverse under the Act of 1856, ch. 112, puts in issue all that the general issue at common law allowed, it is *for the jury*, if the evidence warrants it, to inquire whether a just occasion, or author- ized motive existed, for the publication of the supposed libel.

It is error to grant an instruction upon any proposition, to sustain which there is no proof, and if there is any reasonable ground to suppose such an instruction had any influence upon the minds of the jury in making up their verdict, the judgment will be reversed.

APPEAL from the Circuit Court for Frederick County.

Action for a *libel*, brought November 18th, 1856, by the ap- pellant against the appellee. The declaration in its first count charges, that the defendant falsely and maliciously caused to be printed in a newspaper called *"The Examiner,"* the fol- lowing card:—"MESSRS. SCHLEY & HALLER, *Gentlemen:*—It is with heartfelt regret that I have to say, that Mr. Adam Hagan, not content with publishing the certificate as I gave it, has added or caused to be added to it in a way calculated, in its nature, to ridicule me in the eyes of the public. What could have been his motive I am at a loss to say, as he might have accomplished every purpose that the certificate was cal- culated to accomplish, without being guilty of the principle of forgery, which, if I am so unfortunate as to be compelled, I think I will be able to prove, but I would do so with great reluctance on account of his venerable mother and his respec- table relations.—CHARLES HENDRY;"—meaning thereby that the plaintiff had been guilty of the crime of forgery.' The second count charges the publication in the same words, mean- ing thereby that the plaintiff had been guilty of the principle of forgery, that is to say, of the moral crime or offence of forge- ry, and intended thereby to bring the plaintiff into public infamy, ridicule, contempt and discredit. The defendant

pleaded that, he did not commit the wrong alleged, on which plea issue was joined.

*1st Exception:* The plaintiff proved by Baughman, that some days previous to the publication of the card complained of, the defendant called at his office and complained that a card published in "*The Citizen,*" (a newspaper of which witness was editor and publisher,) bearing defendant's signature, was injurious to him, and was not published as given to plaintiff by defendant; that the defendant was excited in his manner, and witness then took his paper and slowly read over the defendant's card as follows:—"URBANA, *September 25th,* 1856. This is to certify, that I am personally acquainted with Mr. Adam Hagan, and have always considered him a young man of sober and moral character. I also saw and talked with Mr. Hagan at the barbecue, and could not say he was intoxicated. He was excited, as I thought, from ill-treatment he thought he had received, but I know but little of the occurrence myself. CHARLES HENDRY, Member of the American Political Party, and Judge of the Urbana District Polls,"—and asked him if it was right, to which he replied yes, as to all that part above his signature, but said the words immediately under his signature had been added, and of that he complained; witness then reasoned with him and said, it was evidently the intention of the addition merely to designate his position and standing, for the purpose of giving weight to his card in vindication of the plaintiff from the charge therein referred to, and after this conversation, defendant's manner altogether changed, and he left witness in a pleasant way. The plaintiff further proved by Schley, the editor and publisher of "*The Examiner,*" that at defendant's request he published the card complained of, in his paper, which has a large circulation in this and other States. The plaintiff then offered to prove by this witness, that his paper had a circulation in Kentucky, offering to follow up the same with proof that the plaintiff, at the time of the alleged *libel,* resided in that State, and was here on a temporary visit to his family and friends; to which evidence of

the circulation of said paper in that State, the defendant objected, and the court, (NELSON, J.,) sustained the objection. No exception was reserved at the time of this decision, but afterwards, and after the witness had given further testimony, and another question as to the admissibility of his evidence had been subsequently raised, argued and decided by the court, and during the cross-examination of the same witness by defendant, the plaintiff excepted to said ruling of the court upon the evidence as it then stood, and prayed the court to sign and seal this exception, which the court refused to do upon the ground that it was too late, the exception not having been reserved at the time of the decision, nor until after other testimony had been given. To which decision of the court in regard to the admissibility of the evidence offered by the plaintiff as aforesaid, and the ruling of the court in regard to signing said exception, the plaintiff excepted.

*2nd Exception:* After the evidence in the preceding exception, made part of this, the defendant, on cross-examination of said Schley, asked him to state the whole of what defendant said at the time he handed witness the card complained of, for publication, to which he replied, that when defendant brought him the card, witness took it and read it without saying any thing until he came to the words "principle of forgery," which he repeated aloud, when defendant said "yes, I went to the Citizen Office and could obtain no satisfaction;—you see I do not charge him with forgery, but don't you think he has been guilty of the principle of forgery?" The plaintiff was not present at this conversation. To which evidence of said Schley, on cross-examination, the plaintiff objected, but the court allowed it to go to the jury, and to this ruling the plaintiff excepted.

*3rd Exception:* After the evidence in the preceding exceptions, made part of this, the said witness, Schley, in continuation of his testimony on cross-examination, and in response to the same question propounded to him, as stated in the preceding exception, and as a continuation of the conversation be-

Hagan *vs.* Hendry.

tween witness and defendant, mentioned in said exception, proved that he told defendant in that conversation that forgery had a technical meaning, and that the allegation in his card did not come within the definition of forgery, or words to that effect, but that from the addition to the card published by the plaintiff in "*The Citizen,*" witness thought the plaintiff was guilty of the principle of forgery; that defendant then said that these words, to wit: "Member of the American Political Party, and Judge of the Urbana District Polls," were calculated to make him ridiculous, and witness remarked, "yes, at the time the paper appeared containing the card purporting to be writ- by you, I heard many persons in The Examiner Office speak- ing jeeringly of you, because of the words referred to;" defend- ant then added that he had not put these words there, and that the fact that they had been added to his name, rendering him ridiculous in the eyes of the public, made it necessary for him to publish his card, there was nothing else left for him to do in his vindication; that the first time witness saw defendant after the publication in "*The Citizen,*" bearing his signature, was, when he brought the card complained of for publication, as already stated, and that witness had not previously com- municated to defendant the fact that he had been ridiculed for the card in "*The Citizen.*" The plaintiff objected to the admissibility of the foregoing evidence, but the court allowed it to go to the jury, and to this ruling the plaintiff excepted.

*4th Exception:* After the evidence contained in the preced- ing exception, made part of this, the defendant proved by seve- ral witnesses, that after the publication of the card in "*The Citizen,*" he was ridiculed by the public for the words, "Mem- ber of the American Political Party, and Judge of the Urbana District Polls," appended to the said card, and that the fact of such public ridicule was communicated to the defendant before he published the card complained of as libelous, in "*The Examiner,*" and that the plaintiff admitted that he had, himself, placed these words where they appear, to said card, after it had been written by the defendant, with his own prop- er signature, and delivered by him to the plaintiff.

The defendant then prayed the court to instruct the jury, that if they shall believe from all the evidence in the case, that the publication of the card in question by the defendant, was in a fair, honest, *bona fide* vindication of himself, and without malice, then the plaintiff is not entitled to recover. The court granted this instruction, and to this ruling the plaintiff excepted.

The jury rendered a verdict that the defendant was not guilty of the trespass in the declaration specified, and from the judgment thereon in favor of the defendant, the plaintiff appealed.

The cause was argued before Bowie, C. J., Bartol, Goldsborough and Cochran, J.

*Jos. M. Palmer,* for the appellant.

1st. The questions involved in the second and third exceptions are substantially the same. The defendant having pleaded not guilty, the only question was the fact of publication of the libel; its truth could not be given in evidence for any purpose under the issue joined on this plea. The only purpose for which the witness, Schley, was examined in chief, was to prove the publication of the libel at the request of the defendant, but under the rulings of the court in these exceptions, the defendant, on cross-examination of this witness, was allowed to give in evidence his own opinion as to the meaning and construction of the published libel, and also the opinions of the witness, that the libel did not come within the definition of forgery. Though great latitude is allowed in cross-examination, no authority can be found warranting the admission of such evidence. In cases of verbal slander the defendant is entitled to all that was said by him at the time of uttering the slanderous words to show the *quo animo,* so in case of a written libel he is entitled to have the whole publication read to the jury, for the hearers of verbal slander, and the readers of written slander, can only judge accurately as to the intent and spirit

of the slanderer, from the whole that was said and written.
But this rule has no application to the questions under con-
sideration. The defendant here is not sued for any thing he
said to Mr. Schley, when he gave him the libelous card for
publication; if he was, he would be entitled to have the whole
of the conversation given to the jury on cross-examination, but
he is sued for the actual publication of the malicious libel, and
nothing that he said or could have said to the editor when he
gave him the libel for publication, or any declaration or opinion
made or given at the time by the editor, could in the slightest
degree have affected or influenced the minds of the readers of
the publication. The reader would be left to judge of the
malignity and true character of the publication, from the pub-
lication itself, unaided by any thing that was said to or by the
editor when the libel was left for publication. This did not
accompany the malicious libel into the hands of a thousand
readers. A cross-examination will be held irrelevant when it
tends neither to contradict nor to qualify the result of the ex-
amination-in-chief, nor to impeach the credit of the witness.
*Powell on Evidence,* 383. 1 *Greenlf's Ev., secs.* 445, 446.
1 *Phillip's Ev.,* 272. 1 *Starkie's Ev.,* 160, 162. 7 *East.,*
108, *Spenceley vs. De Willott.* 16 *Sergt. & Rawle,* 77, *Ell-
maker vs. Buckley.* 6 *G. & J.,* 487, 488, *Goodhand vs.
Benton.* 2 *McCord,* 230, *Nettles vs. Harrison.* The cross-
examination here allowed, it is submitted, does not tend either
to contradict or qualify the result of the examination-in-chief,
nor to impeach the credit of the witness. The declarations
and opinions of the *defendant* expressed to the witness at the
time he requested the libelous card to be published, were not
evidence for any purpose, for it is an unbending rule of evi-
dence, that a party to a suit cannot offer in evidence his own
declarations in relation to the subject of controversy. 1 *Gill,*
140, *Whiteford vs. Burchmyer, & Adams.* 11 *Md. Rep.,*
557, *Nusbaum vs. Thompson.*

2nd. The prayer granted by the court in the fourth excep-
tion, is manifestly erroneous, and cannot be sustained on any

principle. It is admitted that malice is the gist of an action for written or oral slander; and there are two sorts of malice—malice in fact and malice in law; or in other words, malice expressed and implied. In ordinary actions for defamatory publications, the law implies sufficient malice to sustain the action, and it is not necessary for the plaintiff to prove express malice. The publication in this case was clearly libelous, and not justifiable on any principle, and in all cases where the publication is defamatory, the law infers malice, unless it can be shown that the publication was made as a privileged communication. Here there was no question made in the court below, that this publication was a privileged communication, and if there had been it could not have been sustained. It is clear the publication, and circumstances attending it, were not of such a character as to rebut the inference of malice, and it is insisted the court erred in submitting the question of malice to the jury. 2 *Saund. Pl. & Ev.* 949, 950. *Bull N. P.*, 8. 6 *G. & J.*, 418, *Rigden vs. Wolcott.* 4 *Barn. & Cress.*, 247, *Bromage vs. Prosser.* The case last cited is directly in point. The instruction submitting the question of malice to the jury, was not made upon the principle that the publication was a privileged communication, but if it had been it would have been erroneous, for the publication has not a single ingredient of such a communication, as clearly appears by all the authorities. 2 *Saund. Pl. & Ev.*, 949. *Cooke on Defamation*, 35, 36. 3 *How.*, 266, *White vs. Nicholls.* 5 *Carr. & Payne*, 543, *Cockayne vs. Hodgkisson.* 13 *Md. Rep.*, 95, *Robinett vs. Ruby.* 13 *Com. Bench Rep.*, 837, *Wenman vs. Ash.* The court below assumed in its instruction, that the defendant was justified in publishing the libelous card complained of, in vindication of himself for supposed injuries sustained by him from a prior publication, made by the plaintiff, of a certificate, which the defendant supposed rendered him ridiculous in the eyes of the public. This view of the subject of libel is certainly untenable, and not sustainable by any authority. It would be, in effect, establishing the principle, that one libel

can be set off against another. This would be a legal anomaly. The defendant could have given in evidence libelous publications made by the plaintiff against him, before the one charged in the plaintiff's declaration, in mitigation of damages only, and not as a defence to the action. *1 Md. Rep.*, 179, *Botelar vs. Bell.* 6 *G. & J.*, 418, *Rigden vs. Wolcott.* 4 *G. & J.*, 342, *Davis vs. Griffith.* 13 *Pick.*, 503, *Child vs. Homer.*

*Oliver Miller*, and *A. B. Hagner*, for the appellee:

1st. The ruling in the first exception has not been questioned in argument, and should be affirmed. Unless the exception is taken at the time the objectionable ruling is announced, it becomes the law of the case relieved of all objection; the party cannot afterwards be allowed to resume the abandoned point whenever it may suit his pleasure. *Graham's Practice*, 326. 3 *Chitty's Genl. Practice*, 915.

2nd. The rulings in the second and third exceptions admitting the evidence of Schley, it is insisted were correct. If the testimony was admissible for any purpose, it was error to exclude it. 8 *Gill*, 374, *Winter vs. Donovan.* 2 *Gill*, 227, *Addison vs. Hack.* The courts incline to extend the latitude allowed counsel on cross-examination, (1 *Greenlf's Ev.*, sec. 446. 16 *Md. Rep.*, 578, *Green vs. Caulk,*) and to admit evidence as part of the *res gestæ*, formerly rejected as such. 5 *Md. Rep.*, 450, *Handy vs. Johnson.* 6 *Md. Rep.*, 320, *McDowell vs. Goldsmith.* The plaintiff had proved by Baughman the mode of publication, to enhance the damages and show malice, (2 *Greenl's Ev.*, sec. 420,) and it was clearly admissible for the defendant on cross-examination to *rebut* this evidence. 3 *Cow. Phillips' Ev.*, (*4th Ed.*,) 559. *Cooke on Defamation*, 140. 6 *G. & J.*, 414, *Rigden vs. Wolcott.* 4 *G. & J.* 342, *Davis vs. Griffith.* The meaning of the defendant is a question of fact to be found by the jury, and can be proved by the testimony of persons conversant with the facts. 2 *Greenlf's Ev.*, sec., 417. 4 *Md. Rep.*, 455, *Long vs.*

*Eakle.* 1 *Md. Rep.*, 173, *Botelar vs. Bell.* As part of the *res gestæ*, the evidence was admissible as showing the intent with which the card was published. 1 *Greenlf's Ev.*, sec. 108. 2 *Ibid.*, sec. 419 to 425. 3 *Cow. Phillips' Ev.*, (*4th Ed.*,) 560, 565. 9 *G. & J.*, 210, *Cross vs. Black.* 5 *H. & J.*, 86, *Baptiste vs. De Volunbrun.* 4 *Indiana*, 327, *Strange vs. Donohue.* 18 *Illinois*, 200, *Croff vs. Ballinger.* 5 *Ohio*, (*N. S.*,) 296, *Van Derveer vs. Sutphin.* *Cowp.*, 672, *Rex. vs. Horne.* By the provisions of the Act of 1856, ch. 112, and especially by sec. 73, which declares that the averment of the *defamatory sense* of the libel is *put in issue* by the *denial of the libel*, the whole question of *malice* is left to the jury, and in this view of the case, this evidence was clearly admissible to disprove malice in the publication complained of. Nor are express authorities on this very point wanting. In the case of *Taylor vs. Church*, 4 *Selden*, 452, it was held in an action for a *printed libel*, that it was proper to admit evidence of what was said by the defendant in directing the printing, in order to disprove actual malice, and to influence the question of damages. To the same effect are the cases of *Bush vs. Prosser*, 1 *Kernan*, 347; *McDaniel vs. Baca*, 2 *California*, 338; *Swan vs. Tappan*, 5 *Cush.*, 110; and *Toogood vs. Spyring*, 4 *Tyrwh.*, 582, 595. See, also, 1 *Starkie on Slander*, *page* 83 *of preface*, and *marginal pages*, 170, 211, 214, 217, 315, 325, and *vol.* 2 of the same work, *marginal pages* 256, 321, 326.

3rd. If the views relied on in the preceding point are correct, and the authorities there last cited correctly state the law of libel, then it is clear the court correctly granted the prayer in the fourth exception. But, in addition to these views, it is further submitted, that where words are not *in themselves* actionable, the plaintiff must prove actual malice. 2 *Greenlf's Ev.*, secs. 418, 421. 3 *How.*, 287, *White vs. Nicholls.* The words in this publication are clearly not actionable in themselves, for they charge, if true, no offence or crime for which the plaintiff could be punished in a court of temporal jurisdiction. This was the test in England, and so the law remains

here, except where changed as to *femmes sole* by the Act of 1838, ch. 114. In libel cases the jury are the judges whether the publication is a libel or not, as well as whether the defend-ant published the libel complained of. They have the right to render a mixed verdict, (*Bushell's case*, *Vaughan Rep.*, 135. 2 *Starkie on Slander*, *marginal pp.*, 335 to 355,) and this court cannot say whether, by the *general verdict* in this case, the jury intended to say this publication was not libelous, or that the defendant did not make the publication. They probably intended to say the card was not a libel. How then was the plaintiff injured by any ruling of the court in this case? In *Cross vs. Hall*, 4 *Md. Rep.*, 426, the jury found a general verdict for the defendant, upon the pleas of *non-assumpsit* and limitations. The court below refused to strike out the latter plea, and the plaintiff appealed. This court held, that even if this ruling was erroneous the judgment could not be reversed, because the verdict upon the plea of *non-assumpsit* being for the defendant, they could not see that the plaintiff had been injured by the ruling excepted to. 2 *Greenlf's Ev.*, sec. 411. Where the court can see that the plaintiff cannot recover below, they will not award a *procedendo* even if they reverse the ruling below. 11 *Md. Rep.*, 331, *Tucker vs. The State.* 1 *Md. Rep.*, 115, *Mudd vs. Harper.* 5 *Md. Rep.*, 450, *Stewart vs. Spedden.* As the words com-plained of are not actionable, the plaintiff could not recover in another trial if it were granted him.

Bowie, C. J., delivered the opinion of this court.

The questions presented by the bills of exception in this case, arise and depend chiefly upon the extent to which the pleadings in actions for libel are modified by the Act entitled, "An act to simplify the rules and forms of pleading and prac-tice in the courts of law," 1856, ch. 112. The suit was in-stituted on the 1 th of November 1856, by the appellant against the appellee, for certain supposed libelous publications. The declaration and pleas are framed under the Act referred to.

Four exceptions were taken below, the first, upon the refusal of the court to allow the plaintiff to except to a previous ruling of the court, which had been submitted to without reserving the right to except, and to which, at a subsequent stage of the trial, he undertook to except. This exception has not been urged by the appellant before this court; the ruling of the court below, however, seems to be consonant with the most approved authorities. *Chitty's Gen. Prac.*, 915. *Graham's Prac.*, 326.

The second and third exceptions present the question of the admissibility of the evidence embodied in them, under the issue joined. The *nar.* contained two counts, framed under the Act of 1856, ch. 112, sub-ch. 3, sec. 33, to each of which counts the defendant, in the language and form of said Act, sub-ch. 3, sec. 61, pleaded, "He did not commit the wrong alleged." It would be difficult to condense, within reasonable limits, the effect and operation of this law upon the rules of special pleading previously recognized and sanctioned in this State. It will be sufficient, for the purposes of the case, to cite a few of the sections relating immediately to the subject.

Among the "General Rules of Pleading applicable to all cases," this fundamental rule is laid down, "The pleadings shall be so conducted as to evolve upon the record, by the effect of the allegations themselves, the questions of law and of fact disputed between the parties, and present them as the subject-matter of decision."

Article 2d. "There shall be only two forms of traverse, viz: a direct traverse and an indirect traverse. The general issues, and the replication *de injuria,* and the formal traverse with an *absque hoc,* shall not be used."

Sec. 46. "Where to any action for injury to *person* or *character* or property, *any matter of excuse or justification* is pleaded, the plaintiff shall, in the replication, deny it in the words of the excuse or justification, or to the like effect, or may plead some special defence."

Sec. 47. "All defences, except a direct denial of the facts alleged, shall be pleaded specially."

Art. 5, sec. 73. "In all actions of libel or slander, the plaintiff shall be at liberty to aver that the words or *matter complained* of were used *in a defamatory sense*, specifying such defamatory sense, without any prefatory averment, to show how such words or matter were used in that sense, *and such averment shall be put in issue by the denial of the alleged libel or slander*, and where the words or matter set forth, with or without the alleged meaning, show a cause of action, the declaration shall be sufficient."

Art. 6, sec. 86. "All questions of law, unless raised by demurrer, shall fall under the decision of the jury, in the issue in fact, subject to the direction of the court, upon a prayer for that purpose."

The declaration alleges "the defendant falsely and maliciously caused to be printed and published of the plaintiff, in a newspaper" (certain words,) meaning thereby, "that the plaintiff had been guilty of forgery." The defendant pleads, "he did not commit the wrong alleged."

The plea is a direct traverse, and put in issue the *malicious printing and publishing, and the defamatory sense of the libel complained of.*

The object of sec. 73, Art. 5, was to extend the effect of the denial of the alleged libel to the averment of the defamatory sense, giving it almost, if not quite, as wide a range as the general issue, which the new system prohibits. Under the general issue at common law, the defendant may give in evidence any matter tending to deny or disprove any material allegation of the plaintiff, such as the publishing of the words, the malicious intention or the injurious consequences resulting from the act complained of. 2 *Greenl. Ev.*, sec. 421.

The witness, whose testimony is excepted to in the second and third bills of exception, having been called by the plaintiff to prove the printing and publication of the supposed libel, and having proved the same, the defendant, by way of cross-examination, asked the witness to state the whole of what the defendant said, at the time he handed the witness the paper

and requested him to publish it, (the plaintiff not being present *at the time*,) to which evidence the plaintiff objected.

If the object of this testimony was, as its purport implies, to explain the sense in which the defendant used the supposed defamatory words, it was not admissible. The question for the jury is not, what the party meant according to some reservation in his own mind, but what he meant to make others believe;—what he expected would be understood by those to whom the words were addressed; and for the meaning of the words, as they are understood by others, he is responsible. *Read vs. Ambridge*, 6 *Carr. & Payne*, 308. *Shipley vs. Todhunter*, 7 *Carr. & Payne*, 680. *Kennedy vs. Gifford*, 19 *Wend.*, 296, cited in 1 *Amer. Lead. Cases, (Ed. of* 1857,) 133.

To amount to an explanation, the qualification must extend as far as the hearing of the words; it must be shown all the hearers understood it as relating to a transaction not felonious. *Phillips vs. Barber*, 7 *Wend.*, 439. 16, *Mees. & Wels.*, 442.

The slander, complained of, being written or printed, (not oral or verbal,) the explanatory words used by the defendant, could not be known to all the readers of the libel, and, upon the principle of the preceding cases, should have been excluded; nor were they admissible as a part of the *res gestæ*, as, though coincident in time with the order to print, they threw no light upon the publication, nor tended to extenuate the legal malice implied in the act. The testimony in the second and third bills of exception is liable to the further objection, that it comes not within the limits of cross-examination, and violates an unbending rule of evidence, that a party to a suit cannot offer in evidence his own declarations. 1 *Gill*, 140. 11 *Md. Rep.*, 557.

The 4th exception was taken to the instruction of the court to the jury, that if they believe from the evidence in the cause, the publication, in question, by the defendant, was a fair, honest, *bona fide* vindication of himself, and *without malice*, then the plaintiff is not entitled to recover.

"Upon consideration of the various cases upon the subject, we may conclude that any publication injurious to the social character of another, and not shown to be true, or to have been justifiably made, is actionable as a false and malicious libel. Malice, in an action of this kind, consists in intentionally doing, without justifiable cause, that which is injurious to another, and every thing injurious to the character of another, is, in this action, taken to be false, until it is shown by plea to be true. Therefore, every publication injurious to the character, is, in law, false and malicious, until the presumption of falsehood is met by plea of the truth, or the presumption of malice is removed by showing a justifiable occasion or motive." 1 *Amer. Lead. Cases*, *(Ed. of* 1857,) 116.

The plea of justification was not made in this case, and where the truth of the charge is designed to be given in evidence, it must, at common law, be specially pleaded:

A just occasion, or an authorized motive for speaking or writing, may be given in evidence under the general issue at common law;—5 *Adol. & Ellis*, 645. 15 *Meeson & Welsby*, 435, 437, and other cases cited in 1 *Amer. Lead. Cases*, *(Ed. of* 1857,) 162;—or may be specially pleaded. *Ibid.*

Any defence which shows a rightful occasion, and an authorised motive, removes the legal presumption of malice, and matters thus protected are called *privileged communications*. The operation of such evidence is this: the showing of a privileged occasion, *prima facie*, removes the quality of malice, and puts upon the plaintiff a necessity of showing express or actual malice, and if this be proved, the defence entirely fails. *Child vs. Affleck*, 9 *Barn. & Cress.*, 403. 1 *Amer. Lead. Cases*, *(Ed. of* 1857,) 166, 167.

"In some cases the whole question of privileged communication has been left to the jury, but there can be *no doubt, that properly, the question whether the occasion is such as to rebut the inference of malice, if the publication be bona fide,* is one of law for the court, and whether *bona fides* existed, is one of

fact for the jury, *Coxhead vs. Richards,* 2 *Com. Bench Rep.,* 569, 584, 600, but as the protection always involves matter of intention and good faith, it is said in *Cooper vs. Stone,* 24 *Wend.,* 434, 441, 442, that the question of privileged communication cannot be settled on demurrer to the declaration, but requires the intervention of a jury." *Notes to Howard vs. Thompson,* 1 *Amer. Lead. Cases, (Ed. of* 1857,) 167.

Assuming the direct traverse prescribed by section 61, sub-ch. 3, of the Act of 1856, ch. 112, enlarged by section 73 of Article 5, puts in issue all that the general issue at common law allowed, it would have been competent for the jury, *if the evidence warranted it,* to inquire, whether a just occasion or authorized motive existed, for publishing the supposed libel.

The 86th sec. of Art. 6 of the Act above cited declares, "all questions of law, unless raised by demurrer, shall fall under the decision of the jury on the issue in fact, subject to the direction of the court, upon a prayer for that purpose." Whether this section is more than declaratory of the common law, it is unnecessary to determine. At the instance of neither party can the court grant an instruction upon any proposition, to sustain which there is no proof in the cause. And should it be done, where there is any reasonable ground for supposing the instruction has produced any influence upon the minds of the jurors in making their verdict, the decision will be reversed on appeal. 4 *Md. Rep.,* 457, *Long vs. Eakle.*

Regarding the testimony offered by the defendant, through Mr. Schley, as inadmissible to show want of malice in the publication of the supposed libel, or to show a just occasion or authorized motive, we think there was no evidence in the cause to base the instruction on.

*Judgment reversed, and*
*procedendo awarded.*