[No. 9062.    Department One. — July 27, 1886.]

## ALEXANDRIA KEDROLIVANSKY, RESPONDENT, *v.* GUSTAVE NIEBAUM, APPELLANT.

SLANDER — WORDS IMPUTING WANT OF CHASTITY. — The action was brought to recover damages for an alleged slander. The complaint averred that the defendant said of and concerning the plaintiff, that "she was a bad woman, and that you had better have nothing to do with her case, as it is a very bad one; that she had not lived with her husband for two years previous to his death, and that she was the cause of her husband's death; that she had driven him to drinking, and that her husband fell while drunk, and was killed." It was further alleged that the words signified, and were understood by the hearer to mean, that the plaintiff had deserted her husband, and had, prior to his death, led an unchaste life, and had become *enciente* while living apart from him, and that such bad conduct on her part drove him to drinking, and caused his death. *Held*, that the complaint stated a cause of action.

ID. — MEANING OF AMBIGUOUS WORDS — QUESTION FOR JURY. — In such a case, the words used being ambiguous, their meaning is for the jury to determine.

APPEAL from an order of the Superior Court of the city and county of San Francisco granting a new trial.

The facts are stated in the opinion.

*McAllister & Bergin*, for Appellant.

*Henry E. Highton*, for Respondent.

BELCHER, C. C. — This is an appeal by the defendant from an order granting the plaintiff a new trial.

The action is for slander, alleged to have been spoken of and concerning the plaintiff by the defendant in the presence and hearing of a Mrs. Goodall.

The complaint alleges that the plaintiff is the widow of Paul Kedrolivansky, who died at San Francisco on the 19th of June, 1878, a subject of the Russian government, and the mother of six children, the youngest born to her on the 18th of September, 1878, and that she is in good standing and reputation, and is entitled, under the laws of Russia, to a pension of $112.50 per month

for fifteen years; that being poor and destitute, with six children on her hands to support and educate, she applied to the Ladies' Protection and Relief Society of San Francisco for assistance, and thereupon Mrs. Goodall was authorized to visit the family of plaintiff, which she did on the 15th of November, 1879; that Mrs. Goodall, while visiting the family of plaintiff, saw there some of the children, and particularly the youngest, and immediately thereafter, in consequence of information received from plaintiff, went to the office of defendant "to ascertain, if possible, why the pension of plaintiff was not paid according to custom and the laws of the government of Russia"; and that the defendant then and there, in the presence and hearing of Mrs. Goodall, spoke and published of and concerning the plaintiff as follows:—

"That said plaintiff was a bad woman, and that you had better have nothing to do with her case, as it is a very bad one; that she (said plaintiff) had not lived with her husband for two years previous to his death, and that she (said plaintiff meaning) was the cause of her husband's death; that she had driven him (her said deceased husband) to drinking, and that her husband fell while drunk, and was killed."

It is then alleged that these words signified, and were understood by Mrs. Goodall to mean, that the plaintiff had deserted her husband, and had, prior to his death, led a dissolute and unchaste life, and had become *enciente* while living apart and separate from her husband, and that such bad conduct on the part of plaintiff drove her husband to drinking, and caused his death.

The defendant answered, denying, among other things, that he spoke of and concerning the plaintiff as charged in the complaint, or that he spoke any words which were slanderous or untrue.

The case was tried before a jury, and a verdict returned in favor of the defendant, on which judgment was entered. The plaintiff moved for a new trial, and her motion was

granted, upon the ground that certain testimony had been improperly admitted before the jury.

It is now claimed for the appellant—and this is the only point made—that the court erred in granting the motion for new trial, because the complaint stated no cause of action.

Under our statute, words which impute to a woman a want of chastity are slanderous and actionable *per se.* (Civ. Code, sec. 46.)

The words complained of here are alleged to have signified and been understood to mean that the plaintiff was an unchaste woman. Did they admit of the meaning imputed to them?

That they were understood by Mrs. Goodall to have the meaning charged is clear from her testimony. She said: "Well, he said she had driven him to drink, and I supposed she was an immoral woman, and had been untrue to her husband, or this little nursing child would not have been around. That is the inference that I drew; that is what had driven him to drink."

The words are somewhat ambiguous, but charges of unchaste conduct are seldom made in plain and direct words. They are usually made by indirection or insinuation, and however made are slanderous when they convey to the minds of the hearers the meaning that the woman was unchaste.

When the words used are ambiguous, it is for the jury to determine what is their meaning. The rule is thus stated by Townshend in his work on Slander and Libel, sec. 140: "Where the language is ambiguous, in that case the manner in which it was or might be understood by those to whom it was published is material, and will control in determining the meaning; but where the language is unambiguous, it is to be construed in its ordinary sense, and without reference to how those to whom it was published understood it, or what was intended by the publisher."

In *Kennedy* v. *Gifford*, 19 Wend. 300, it is said it is the sense in which the hearers understood the words on which the jury are to pronounce. And in *Dorland* v. *Patterson*, 23 Wend. 422, it is said the speaker "is accountable for the import of the words as they will naturally be understood by the hearer."

In *Riddell* v. *Thayer*, 127 Mass. 487, it was held that in an action for slander, if the slanderous words charged are that the plaintiff, a married woman, is a "bad woman," a "bitch," and a "whore," it is for the jury to determine the sense in which the word "bad" is used, and an instruction that for the purpose the jury may take into account the accompanying words and surrounding facts is not open to exception.

In *Vanderlip* v. *Roe*, 23 Pa. St. 84, the words spoken of the plaintiff were, "She is a bad character, a loose character." After verdict for the plaintiff, there was a motion in arrest of judgment, upon the ground that the words were not actionable. The Supreme Court said: "It is said that these words do not expressly charge fornication, and here lurks the whole error of the court below. This is in fact a return to the old doctrine of *mitior sensus*. They do charge it expressly, or not at all, unless we falsify their meaning by treating them too kindly. Such words are always understood as an assault upon the bright central virtue of a woman's character, and it is almost always made in a covert way,— such is the *norma loquendi*. There is some natural and instinctive decency still left even in the most degraded characters, that prevents them from speaking of this offense in the most direct terms. . . . . . The meaning of such expressions may be properly averred in the innuendo, and the jury must decide whether the averment is true." Judgment was then ordered to be entered upon the verdict.

In our opinion, the complaint stated a cause of action, and the order appealed from should be affirmed.

SEARLS, C., and FOOTE, C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the order is affirmed.