## PEOPLE *v.* DEREMO.

CRIMINAL LAW—ILLEGAL FISHING—INTENT—NETS SET FOR TURTLES.
   3 How. Stat. § 2197*f*, declares that it shall be unlawful for any
   person to take or catch, or attempt to take or catch, any fish
   in certain waters by means of nets, " provided that the use of
   dip nets in catching mullet, redsides, and suckers shall not be
   unlawful." *Held*, that one who sets a net for the purpose of
   catching turtles is not guilty of a violation of the statute,
   although fish are accidentally imprisoned therein, they being
   returned alive to the water so far as possible. HOOKER and
   GRANT, JJ., dissenting.

Exceptions before judgment from Ottawa; Padgham,
J. Submitted June 20, 1895. Decided October 1, 1895.

Frank M. Deremo was convicted of illegal fishing.
Reversed.

*Walter I. Lillie,* for appellant.

*Fred A. Maynard,* Attorney General, and *Arend
Visscher,* Prosecuting Attorney, for the people.

McGRATH, C. J. Respondent was convicted under sec-
tion 5 of Act No. 111, Public Acts 1889, which provides
that "it shall be unlawful for any person or persons to
take or catch, or attempt to take or catch, any fish at any
time with seines, pound nets, gill nets, or any species of
nets" in certain waters, provided, "that the use of dip
nets in catching mullet, redsides, and suckers shall not
be unlawful" (3 How. Stat. § 2197*f*).     The complaint
alleged that respondent "did, feloniously and unlawfully,
then and there catch, and attempt to take and catch, fish
with a fyke or hoop net."

The respondent offered proof tending to show—

"That he had made over the nets for the purpose of
catching turtles; that the funnel was made large enough
so that, when fish went into the nets, they could swim

out again; that in a fish net proper the funnel was left hanging loose, so that there was no opening for the fish to come out; and that these particular nets were made with the opening, and with strings tied from the end of the funnel or opening to the main side of the net, so that, when the net was set as these nets were set, the opening of all the funnels was pulled open thereby, giving the fish plenty of room to swim out after they went into said nets; that all of said nets were so arranged, and for the purpose of letting fish which swam in, swim out, and that the turtles which went in could not get out because of their size and shape; that all of these nets were hoop nets; that these nets were set differently than nets were set for catching fish; that these nets were set with pieces of heavy chains at the bottom, so that the bottom of the nets would be in the mud, and to catch them the nets had to be on the bottom, and were set in about 12 to 15 feet in depth of water; that in setting nets for fish there are no chains on the bottom to hold them in the mud, for the reason that fish do not crawl on the bottom; that the respondent told Hammond (the deputy game and fish warden), in the winter before, that he was going to set nets for the purpose of catching turtles, and that said Hammond saw said respondent set said nets long before the time of taking these nets, and said nothing about it; that the respondent told said Hammond that he (respondent) had caught turtles in said nets before Hammond took them up, and that there were a few fish in them, and that respondent put them back in the water unharmed."

It appeared that the nets were drawn by the deputy game warden, and that fish were found therein.

The trial court refused to give to the jury certain instructions, asked for by defendant's counsel, respecting respondent's intent and purpose in setting the nets, and instructed the jury as follows:

"If you shall find that the nets that were set there were such nets as would take and catch fish,—I say, if you find those to be the facts, and beyond reasonable doubt,—then this respondent would be guilty of the offense here charged, although he may not have drawn the nets himself. If you find that the nets were drawn by this game warden, and fish were then and there

caught in those nets, and that those nets belonged to and were set by this respondent, then he would be guilty, under this act, of unlawfully taking or attempting to take or catch fish. The intent with which he set those nets there has nothing to do with the law of this case, and if he set them with the intent to catch turtles, and actually did and were well calculated to catch and imprison fish and take fish, and the fish were actually taken at the time, it would be a violation of this law."

This instruction was erroneous. The respondent's testimony tended to show that he set the nets for another purpose. The statute does not prohibit the setting of nets, but the catching or taking of fish from the lake by means of nets. It would be a narrow view to take of the language employed to say that a fish accidentally imprisoned by the use of a net employed for another purpose, and one which was shown to be entirely legitimate, was "caught," within the meaning of the statute. Whether or not the net was set for the purpose of catching fish was a question for the jury under all the facts and circumstances of the case.

The conviction is set aside, and a new trial awarded.

LONG and MONTGOMERY, JJ., concurred with McGRATH, C. J.

HOOKER, J. (*dissenting*). The defendant was convicted of the offense of unlawfully taking fish by the use of fyke nets, in contravention of section 5 of Act No. 111 of the Public Acts of 1889. This section provides: "It shall be unlawful for any person or persons to take or catch, or attempt to take or catch, any fish at any time with seines, pound nets, gill nets, or any species of nets in any of the waters of this State," etc. The defendant does not deny that he set the nets, or that fish were caught and killed thereby, but he says that he did not set these nets from a desire to catch fish, but to catch turtles, and that he made no use of the fish that were caught, but released such as were alive when he took up his net. The trial court held that this did not constitute a defense.

It is admitted that the defendant used a net adapted to and commonly used for the purpose of catching fish. There is every reason to suppose that he knew that it would catch fish, for it had done so to his knowledge. To hold him guiltless is to say that a man may do those things which will certainly result in the destruction of fish, if he has another object in view, and will return such fish as he may take, alive or dead, as the case may be, to the water, and not use them, while his neighbor, who desires to keep them, is guilty. In my opinion, a man who sets a net with the knowledge that it will result in the taking and destruction of fish intends to take them, notwithstanding the fact that his primary object may be to accomplish another purpose. He wants the turtles, and to get them he is willing to take or catch the fish. This does not show an absence of intent, for it is just as unlawful to take fish that turtles may be caught as to take fish to sell or to eat.

The right to protect fish by law is within the police power of the State, and there is force in the claim that the act is punishable regardless of the intent. Many cases can be found that hold that convictions may be sustained in the absence of a criminal intent,—e. g., the sale of adulterated milk (Com. v. Farren, 9 Allen, 489); selling liquor not known to be intoxicating (Com. v. Boynton, 2 Allen, 160); marriage of minors by one honestly supposing them of proper age (Beckham v. Nacke, 56 Mo. 546); the killing and sale of a calf under a specified age, though the defendant was ignorant of the animal's age (Com. v. Raymond, 97 Mass. 567); transporting a slave on a steamboat (State v. Baltimore & S. Steam Co., 13 Md. 189). These cases, and others cited in People v. Roby, 52 Mich. 580, where the subject is discussed, fully justify the doctrine that neglect may be criminal. Here there is not mere neglect, but a positive expectation of doing the act prohibited, and immunity is expected upon the claim that the defendant designed to catch turtles, and to do so involved the taking of fish, but his indiffer-

ence as to the fate of the fish relieved him from liability
under the law. In my opinion, the man who sets a net
adapted to the purpose and known by him to be likely to
catch fish, and which actually does take them, cannot be
said to be guiltless.

I think the conviction should be affirmed.

GRANT, J., concurred with HOOKER, J.