Friedburg v. Nudd.

---

## M. FRIEDBURG v. E. H. NUDD.

### No. 691.    (60 Pac. 476.)

SLANDER—*Imputation of Crime—Meaning of Words.*    The slan-
derous words complained of in the petition were proved to have
been uttered by the defendant, and the jury found that such
words imputed to the plaintiff the crime of embezzlement as was
alleged in the innuendo.    *Held,* that as the language complained
of was susceptible of the meaning charged, it was for the jury to
determine what the language meant.

Error from Sedgwick district court; D. M. DALE,
judge.    Opinion filed March 19, 1900.    Affirmed.

*Adams & Adams*, for plaintiff in error.
*Bentley & Hatfield*, for defendant in error.

The opinion of the court was delivered by

MILTON, J.: In this action the defendant in error recovered a judgment, in a jury trial, against the plaintiff in error in the sum of $527.25 as damages, actual and punitive, resulting from an alleged slander. The first count of the petition was stricken out. The second count alleged that while the plaintiff was in the employ of the Wichita Bedding Company, at Wichita, defendant Friedburg stated to G. M. Calhoun, the manager of the said company, that "while working for me, or our company, Nudd sent and shipped goods to Jacobs here in Wichita and to other places that did not go on our books. I procured evidence of the fact that will prove the charge in court," the plaintiff meaning and asserting thereby that the defendant cheated and defrauded him and his company of goods and that the plaintiff had been guilty of embezzlement and larceny, although the defendant well knew that such charge was false; and that the said defamatory and malicious words were uttered for the purpose of injuring and destroying the plaintiff in his reputation and standing with his employer and the public. The petition further alleged that, by reason of the alarm and prejudice engendered in the mind of his employer through the uttering of the aforesaid words, the plaintiff was discharged from such employment and was also greatly injured in his good name and reputation before the public.

The answer contained (1) a general denial; (2) an averment that in a confidential conversation with Calhoun the defendant had stated that one Fallmer

had informed the defendant that while the plaintiff was in the defendant's employ at Arkansas City, he, the plaintiff, had shipped certain goods belonging to the defendant to Fallmer, at Wichita, to pay the plaintiff's private debt, and had not entered such shipment upon the books of the defendant; and (3) that the communication so made was made without malice and without any desire to injure the plaintiff, and the plaintiff was not injured by such communication.

It appears that from March 1, 1892, to September 29, 1894, Nudd was in the employ of the Kansas Mattress Factory, at Arkansas City, Friedburg being manager of the factory. On the last-named date Nudd voluntarily quit such employment, and on the 20th of December following began working for G. M. Calhoun, proprietor of the Wichita Bedding Company, in Wichita, and was so employed until the 21st of March, 1895, when he was discharged, under the circumstances set forth in the petition. The starting up of the mattress business at Wichita appears to have disturbed Friedburg considerably, and he so admitted at the trial. He further admitted that he was anxious to get Nudd out of the mattress business in Wichita, as he knew that Nudd was the only expert workman Calhoun had.

Two of the special findings of the jury were as follows:

"2. If you answer the above question in the affirmative, then state all of the slanderous words or sentences upon which you base the plaintiff's right to recover damages. Ans. Mr. Friedberg said, 'Nudd shipped goods that did not go on our books.'"

"10. What crime or crimes alleged in plaintiff's petition do you find the alleged slanderous words imputed to the plaintiff? A. Embezzlement."

Counsel for plaintiff in error contend that these

findings do not support the verdict, for the reason that the words quoted in special finding No. 2 do not impute a crime. It is evident that the jury did not set forth in their answer all the slanderous words upon which the verdict was based. The slanderous words which the petition alleged to have been spoken were proved to have been uttered by Friedberg to Calhoun. The petition alleged that such words imputed a crime by innuendo, and the jury so found. When the language complained of is susceptible of the meaning charged, it is for the jury to say what is meant by it. (*Henicke v. Griffith*, 29 Kan. 516; *Royce v. Maloney*, 57 Vt. 325, 5 Atl. 395; *Kedrolivansky v. Niebaum*, 70 Cal. 216, 11 Pac. 641.)

The two findings together show that the jury understood that the words used charged embezzlement.

The jury allowed the plaintiff $127.25 as damages on account of his being discharged from Calhoun's employment; $200 for loss of employment; and $200 "as damages to his reputation." In explaining the last-named allowance the jury made the following finding:

"9. If you allow any damages to (for) the injury of plaintiff's reputation, then state in what particular his reputation was injured. Ans. Being generally out of employment on account of being discharged on account of slander."

Counsel for plaintiff in error contends that this finding shows that the jury allowed excessive, in fact, double, damages. The findings must be interpreted in view of the evidence and the instructions given by the court. The first two items are supported by the evidence as actual damages. The instructions authorized the jury to find punitive damages under the circumstances therein stated, and it can scarcely be

doubted that the last item was allowed as such damages. It is evident the jury believed the plaintiff has suffered an injury to his reputation which might impair his ability in respect to obtaining future employment. The judgment of the district court will be affirmed.